16250

PURSLEY v. INMAN *ET AL.*

(54 S. E. (2d) 800)

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Appellant,*

*Messrs. O. Frank Thornton, R. B. Hildebrand* and *John M. Spratt,* all of York, *for Respondents,*

August 11, 1949.

FISHBURNE, Justice.

The appeal in this case requires the interpretation of a special Constitutional Amendment relating to the bonded indebtedness of school districts in York County, with special reference to Clover Consolidated High School District No. 39. This amendment, to Article X, Section 5 of the State Constitution, was duly submitted to the voters at the general election held in South Carolina on November 2, 1948. The election resulted favorably by a majority of those voting, and subsequently, at the 1949 session of the General Assembly, the amendment was duly ratified and became a part of the Constitution of this State. The amendment in question reads as follows:

"Provided, That the limitations as to bonded indebtedness imposed by this Section shall not apply to any school district in York County, such school districts being hereby expressly authorized to incur bonded indebtedness to an amount not exceeding Fifty (50%) per centum of the assessed value of all taxable property therein, where the proceeds of sale of such bonds are to be applied solely to the purchase of additional real estate for school purposes, the erection, maintenance, improvement and equipment of school buildings in any such school districts; and the indebtedness of any other municipal corporation or political division or subdivision in York County shall not be considered in determining the power of any such school district to incur bonded indebtedness within the limits hereby imposed, nor shall the indebtedness of any such school district or districts be considered in determining the power of any other municipal corporation or political division or subdivision in York County to incur bonded indebtedness."

Clover Consolidated High School District No. 39 is a high school district composed of the following common

school districts in York County, to wit: Clover School District No. 37, Bethel School District No. 3, Bowling Green School District No. 22, and Bethany School District No. 2. It was created by action of the respective boards of trustees of the four named common school districts with the view of establishing a centralized high school in the town of Clover, in York County. The proceedings in establishing this high school district were taken pursuant to the provisions of Article III, Chapter 122, Volume 3, Code of Laws of South Carolina 1942.

Subsequent to the ratification of the Constitutional Amendment to Article X, Section 5 hereinabove mentioned, the General Assembly enacted at its 1949 session an Act entitled:

"An Act to Validate the Formation of Clover Consolidated High School District No. 39, of York County, to Authorize the Trustees of Said Clover Consolidated High School District to Conduct an Election to Submit to the Qualified Electors of Said District, the Question of the Issuance of Bonds of Said District in the Principal Amount of not Exceeding Three Hundred Fifty Thousand ($350,-000.00) Dollars, to Authorize the Issuance of Said Bonds Should Said Election Result Favorably, to Provide for the Expenditure of the Proceeds of Said Bonds, and to Provide for the Payment of Said Bonds."

By the foregoing Act, the General Assembly ratified and validated all proceedings incident to the establishment of Clover Consolidated High School District, and empowered its trustees to issue general obligation bonds of the district in an amount not exceeding Three Hundred and Fifty Thousand ($350,000.00) Dollars, if the election authorized and required by the terms of the Act resulted favorably to the issuance of bonds. Thereafter the trustees of Clover Consolidated High School District ordered the election, which was held on March 15, 1949. At this election the following question was submitted to the qualified electors of the high school district:

"Shall the Board of Trustees of Clover Consolidated High School District No. 39, of York County, be Empowered to Issue, Either as a Single Issue or from Time to Time as Several Separate Issues, Bonds of Said School District to the Amount of Not Exceeding Three Hundred Fifty Thousand ($350,000.00) Dollars, Whose Proceeds shall be Expended for the Construction and Equipment of Buildings to be used for High School Purposes and to the Cost of the Acquisition of Real Estate Necessary Therefor?"

The election resulted favorably on the question submitted, and on March 16, 1949, the trustees met and adopted a resolution declaring the result of the election and providing for the issuance and sale of general obligation bonds of the newly created district in the sum of Three Hundred and Fifty Thousand ($350,000.00) Dollars. This appeal does not question the regularity of the proceedings had as to their being in strict conformity with the requirements of the special legislative enactment under which they were taken.

The plaintiff (appellant here), who is a taxpayer and resident of Clover Consolidated High School District, brought this action seeking to enjoin the issuance of such part of the Three Hundred and Fifty Thousand ($350,000.00) Dollars of bonds as will exceed the Constitutional debt limit of the district as authorized by the provisions of Article X, Section 5 of the Constitution as that section was originally worded. That section, without amendment, provides, among other things, that "The bonded debt of any county, township, school district, municipal corporation or political division or subdivision of this State shall never exceed eight per centum of the assessed value of all the taxable property therein."

Appellant in his complaint alleged that the special Constitutional Amendment which we have quoted, has no application to Clover Consolidated High School District No. 39, or any other high school district in York County, for the reason that the Constitutional Amendment relates solely to

the debt limitation of common school districts in York County.

Respondents, who constitute the Board of Trustees of Clover Consolidated High School District, demurred to the complaint, and when the cause came on to be heard the trial court held that the Constitutional Amendment did apply to Clover Consolidated High School District No. 39, and sustained the demurrer.

Appellant contends that the Constitutional Amendment of 1949, properly construed, relates only to *common* school districts. The respondents argue that the Amendment, with its specific wording, "*any* school district in York County," must be given its normal and usual meaning, and must be deemed to include and embrace both common school districts and high school districts. We are in full accord with respondents' contention.

It will be noted that Article X, Section 5 hereinabove quoted, as originally worded and unamended, with reference to bonded debt limitation refers to "any * * * school district," and limits such bonded debt to eight per cent. of the assessed value of the taxable property therein. The Constitutional Amendment of 1949 provides that the limitations as to bonded indebtedness imposed by Article X, Section 5 "shall not apply to any school district in York County * * *." And goes on to expressly authorize such school districts to incur. bonded indebtedness to an amount not exceeding fifty per cent. of the assessed value of all taxable property therein.

The word "any", as shown in *Tuten v. Bowden*, 173 S. C. 256, 175 S. E. 510, 94 A. L. R. 1443, is a word of comprehensive meaning and is frequently used in the sense of "all" or "every." But, like all other general words, its meaning is frequently restrained, and limited by the subject which it qualified, and by the context.

We think there can be no doubt that the Constitutional Amendment of 1949, with its phraseology, "any school dis-

trict in York County," is broad enough to cover and embrace not only common school districts, but high school districts.

It would be a strained construction in this day of common school districts and high school districts to say that the General Assembly and the qualified electors of South Carolina did not intend that this provision should include all school districts, common and high.

The Court of Civil Appeals of Texas had before it a similar question of interpretation in *Sabinal Independent School District v. County Board of School Trustees of Uvalde County*, 211 S. W. (2d) 331. That Court held that the term, "any school district," in a statute authorizing the county board of school trustees to detach from and annex to any school district territory contiguous to a common boundary line of two districts, Vernon's Ann. Civ. St. Tex. art. 2742f, is broad enough to cover a rural high school district, as against the contention that rural high school districts constitute a special class of school districts. In support of this holding, the Texas Court cited the case of *Prosper Independent School Dist. v. Collin County School Trustees*, Tex. Civ. App., 51 S. W. (2d) 748, 750. In the last mentioned case the court said:

"We overruled appellant's contention that said chapter 47 applies only to common school districts. Section 1 empowers a county board of trustees 'to detach from and annex to any school district territory contiguous to the common boundary line of the two districts.' Certainly the term 'any school district territory' is comprehensive enough to embrace both common school districts and independent school districts, and the Legislature having used such general term, the courts are not authorized to place a restriction on its meaning and exclude from its application a school district clearly within the meaning of such general term."

The same reason that would apply to changing the bonded debt limitations of a common school district, will also apply

to any high school district in York County. The special Constitutional Amendment of 1949 was manifestly adopted with the intention that it would embrace and include both common school districts and high school districts in York County.

Appellant cites several former decisions of this court construing other provisions of the Constitution relating to school districts which it is said if strictly applied to the facts of this case would be contrary to the holding which we have made, at least by analogy. The cases referred to are *Hildebrand v. High School District No. 32 of Sumter County,* 138 S. C. 445, 136 S. E. 757; *Powell v. Hargrove,* 136 S. C. 345, 134 S. E. 380; *Arnette v. Ford,* 129 S. C. 52ᶠ 125 S. E. 138.

The Constitutional provision discussed in the foregoing cases, Article III, Section 34 subd. IV, provides that the General Assembly of this state shall not enact local or special laws "To incorporate school districts." The Court held that the foregoing quoted provision from the Constitution of 1895 had no application to high school districts. The case of *Hildebrand v. High School District No. 32 of Sumter County, supra,* directly involved the interpretation of Article XI, Section 5 with reference to school districts, and the Court reached the conclusion that if the Constitution had intended high school districts to be included within the application of that Section, it would have so specifically stated. We think it equally clear here that if those framing the special Constitutional Amendment of 1949 had intended to limit the Constitutional Amendment to common school districts, it would have been so stated.

The cases which we have cited above merely give a contemporary interpretation to the construction of the language of the 1895 Constitution, as was done in the case of *Doran v. Robertson,* 203 S. C. 434, 27 S. E. (2d) 714.

A vast change has taken place in the educational system of this State since 1895. In 1895, when the present Consti-

tution was adopted, there were no free public high schools operating in South Carolina. Public education related entirely to graded or grammar schools. It was not until 1907 that the first statutory enactment authorizing public high schools was passed. Acts of 1907, No. 245, p. 518. It is quite evident that the decisions rendered by this court in the three cases hereinabove cited were based on the fact that when the Constitution of 1895 was adopted, high school districts were not contemplated by the framers of that document. Consequently, in construing the Constitution, the court took the contemporary view of that period, that the provisions of the Constitution to which we have referred had no application to high school districts.

An entirely different situation prevailed when the special Constitutional Amendment was adopted in 1949. It was then well known to the General Assembly and to the qualified electors of the State that there were in existence two types of school districts, to wit: (1) Common School Districts, which provided the elementary schools; and (2) High School Districts. Because of this fact, it would be a natural and logical interpretation of the language of the special Amendment to hold that the words "any school district in York County," include and comprehend both common school districts and high school districts. It is obvious that the conditions surrounding the writing of the present Constitutional Amendment differ entirely from those existing in 1895, when the Constitutional provision of Article X, Section 5 was written, dealing with school districts.

As already indicated, we hold that the words "any school district in York County," embrace both common school districts and high school districts, which, of course, include Clover Consolidated High School District No. 39.

Judgment affirmed.

BAKER, C.J., and STUKES, TAYLOR and OXNER, JJ., concur.