18781

CAROLINA CERAMICS, INC., Appellant, v. CAROLINA PIPE-
LINE COMPANY, Respondent

(161 S. E. (2d) 179)

152

*Messrs. Lightsey & Bowers,* of Columbia, and *West, Holland & Furman,* of Camden, *for Appellant,*

*Messrs. Boyd, Bruton, Knowlton & Tate,* of Columbia, and *Gressette & Gressette,* of St. Matthews, and *William Wilson,* of Camden, *for Respondent,*

*Messrs. Lightsey & Bowers,* of Columbia, and *West, Holland & Furman,* of Camden, *for Appellant, in Reply.*

April 15, 1968.

*Per Curiam*

Carolina Ceramics, Inc., the appellant herein, is engaged in the manufacture of brick, ceramic and other related products, and has a plant located in Kershaw County, South Carolina.

Carolina Pipeline Company, the respondent herein, is a public utility and owns and operates a natural gas line system in South Carolina, which it operates by purchasing natural gas from Transcontinental Gas Pipeline Company and Southern Natural Gas Company, and then transporting and reselling such gas to customers within its franchised area in this State. The respondent supplies large quantites of such gas to the appellant for use in its business. This gas is furnished under a contract entered into between the parties on January 5, 1956, in which the appellant was the buyer and the respondent the seller on a preferred interruptible basis. Under this arrangement the appellant pays a higher price to obtain certain priority in service of gas over general interruptible customers. The basic unit price to be paid by the appellant under this contract was 44 cents per thousand cubic feet. Under Article VIII, paragraph 5, there is set forth an escalation provision by which the basic price for gas to be paid for by the appellant would be increased or decreased under certain conditions. This provision of the contract is as follows:

"In the event that the Commodity Charge for gas as purchased by Seller from Transcontinental Gas Pipeline Company is increased above or decreased below 24.0 cents per MCF, or the Commodity Charge for gas as purchased by

Seller from the Southern Natural Gas Company is increased above or decreased below 18.5 cents per MCF, the amount of such increases or decreases shall be added to or subtracted from, as the case may be, the price of gas to Buyer as set forth herein."

The record shows that at the time the aforesaid contract was made by the parties that the respondent had not yet commenced operation and was not purchasing gas from either Transcontinental or Southern for resale to the appellant or any other customer. Following the obtaining of an appropriate license from the South Carolina Public Service Commission, the respondent commenced receiving its gas supply from Transcontinental on March 24, 1958, and served the appellant with natural gas from this source, until October 26, 1961. During this period the price of gas to appellant was adjusted to reflect any increase or decrease in Transcontinental's charge to respondent. The applicable price on October 26, 1961, was 19.5 cents per thousand cubic feet, reflecting a one cent increase in Transcontinental's charge. On this date Southern also became a supplier by reason of a connection to the respondent's system at Aiken, South Carolina, by means of a pipeline built pursuant to an authorization by the South Carolina Public Service Commission. The commodity cost of gas to the respondent from Southern was 23.67 cents per thousand cubic feet, which was an increase of 5.17 cents per thousand cubic feet over the Southern commodity charge set forth in the contract.

On October 25, 1961, the respondent notified the appellant that its subsequent charge for gas on or after October 26, 1961, would be increased to 49.17 cents (an increase of 4.17 cents) by reason of the increase in commodity charge from Southern from 18.5 cents per thousand cubic feet to 23.67 cents per thousand cubic feet. It is agreed that subsequent to October 26, 1961, escalations have been based on the Southern commodity charge and prior to such date escalations were based on Transcontinental commodity charge.

This action was instituted by the appellant against the respondent for the recovery of alleged overpayments made pursuant to the contract between the parties, it being asserted that in violation of the aforesaid contract the respondent increased the price of gas to the appellant by 4.17 cents per thousand cubic feet although the cost to the respondent had not been increased by Transcontinental nor was the additional charge authorized or warranted by the said contract.

The respondent, by its answer, alleged that all price adjustments were properly made pursuant to the terms of the contract and as a result of charges of commodity prices to it at its source of supply. The respondent further alleged that since October 26, 1961, the sole source of supply of gas from which the respondent sold to appellant was Southern Natural Gas.

This case came on for trial before The Honorable J. B. Ness, Presiding Judge, without a jury, upon certain stipulated facts and evidence introduced by both parties. Thereafter, the trial judge held that, pursuant to the escalation clause above quoted, the cost of gas to the appellant was increased and decreased by the commodity cost to the respondent. He further held that the terms of the escalation clause were clear and unambiguous and that the action of the respondent in increasing the cost of gas to the appellant was fully justified and clearly anticipated by the escalation clause. It is from this order that the appellant prosecutes this appeal.

The appellant does not seek to avoid the escalation clause contained in the contract here involved but does question its application. The validity of an escalation clause has been approved by this court in the case of *Bruce v. Blalock*, 241 S. C. 155, 127 S. E. (2d) 439.

It is the position of the appellant that the trial judge was in error in holding that paragraph 5 of article 3 of the contract here involved was clear and unambiguous. In the Blalock case we held that an ambiguous

contract ·is one capable of being understood in more senses than one, an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning. An application of this rule to the quoted provisions of the contract leads us to the conclusion that the trial judge was in error in concluding that such was clear and unambiguous.

When the parties to this action entered into the contract here involved, the respondent had no source of supply of gas but was negotiating with Transcontinental and Southern in an effort to obtain a supply of gas. The respondent successfully negotiated a contract with Transcontinental on March 24, 1958, and negotiated a contract with Southern on October 25, 1961. It is not clear from the terms of the escalation clause as to, whether the respondent, having obtained a single source of supply of gas, obligated itself during the entire term of the contract to use only the amount of increases or decreases in the commodity charge of that source of supply in applying the escalation clause, even though a second source of supply of gas was thereafter obtained. Was it the intention of the parties, when a second source of supply of gas was obtained, that the amount of the increases or decreases to be added or subtracted from the price of gas to the appellant was to be based upon the commodity charge for gas as purchased from the second supplier, or was it the intention of the parties that the commodity charge for gas as purchased by the respondent from both sources of supply be taken into consideration in determining the amount of increases or decreases that should be added to or subtracted from the price of gas to the appellant? Was it the intention of the parties that if the sole source of supply of gas delivered to the appellant was Southern Natural Gas, that the price of such gas to the appellant be based upon the escalation clause as such applied to Southern alone? The language of the contract leaves the answers to these questions in doubt and uncertain. When the language of the escalation clause is considered in the light of these questions it becomes obscure in meaning.

We have held that where a written instrument is ambiguous parol testimony is admissible to show its true meaning. *Bruce v. Blalock,* 241 S. C. 155, 127 S. E. (2d) 439. Upon a retrial of this case this rule is applicable.

In view of the conclusion hereinbefore reached it becomes unnecessary for us to pass upon the other exceptions posed by the appellant.

It is our conclusion that the decision of the lower court should be reversed and the cause remanded for a new trial, the parties being allowed to offer all admissible relevant evidence which would tend to prove the true and real intent of the parties in the execution of this ambiguous contract.

Reversed and remanded for a new trial.