0702

Margaret E. VOELKER (Formerly Margaret E. Hillock), Appellant-Respondent v. Gordon John HILLOCK, Respondent-Appellant.

(344 S. E. (2d) 177)

Court of Appeals

*Jane A. McFaddin,* Charleston *for appellant-respondent.*

*Robert B. Wallace* of *Wallace & Wallace,* Charleston, *for respondent-appellant.*

Heard Feb. 26, 1986.

Decided May 12, 1986.

CURETON, Judge:

This appeal concerns the dissolution of an eleven year marriage between Margaret E. Voelker (Voelker)[1] and Gordon John Hillock (Hillock). Both parties assign numerous errors to the order of the family court. We affirm in part, reverse in part, and remand.

At oral argument the parties abandoned several issues. Voelker abandoned her desire to be awarded a divorce on the ground of desertion, her objection to the length of visitation awarded to the husband during the summer months and her objection to not being allowed at trial to question Hillock concerning his expected inheritance from his parents. Hillock abandoned his objection to the amount of the child support award and stated his willingness to be fully respon-

---

[1] Approximately one month after Hillock left the marital home, Voelker resumed using her maiden name.

sible for his children's financial needs. Hillock also abandoned his objection to paying rehabilitative alimony for an eighteen month period.

The remaining issues on appeal concern the equitable division of real and personal property, permanent alimony, funds for the children's college education, payment of the children's transportation from their home to their father's home and attorneys' fees.

Hillock, a Michigan native, met Voelker in Canada in 1965. Hillock finished college in 1968 and taught school for two and a half years before moving to Vero Beach, Florida to work in the real estate development business. Voelker obtained a degree in secretarial science in 1969. Thereafter, she worked for two years as a secretarial science lecturer and a secretary. After a seven year courtship, the couple was married on July 24, 1972.

After the marriage the parties settled in Florida. Voelker did not bring any material assets to the marriage. In contrast, her husband already had acquired two vehicles, a condominium and a cottage prior to their marriage. Voelker worked as her husband's secretary while they lived in Florida. Then in 1973 Hillock accepted employment as a consultant to the Sea Pines Company in Puerto Rico. Voelker did not work there because they did not plan to remain in Puerto Rico for any length of time.

In 1974 the parties moved to Atlanta, Georgia so Hillock could enter the field of real estate sales. Hillock commuted approximately sixty miles one way to work in a mountain resort called Big Canoe. Voelker worked as a rental agent in the complex where they lived and also worked as secretary. She used her income to support the household and to buy maternity clothes. In 1975 they bought their first home in Big Canoe with savings and Eight Thousand Dollars ($8,000.00) raised from the sale of Hillock's condominium. Their first child was born on July 28, 1976 and their second child on January 18, 1978.

Voelker was not happy in Big Canoe. She was busy with two young children and there were no other mothers with young children among the permanent residents of Big Canoe. Nevertheless, she helped her husband by entertaining his clients, accompanying him to professional home shows,

typing his correspondence and keeping his financial records. She also had to keep her home in immaculate condition at all times because their home was always "for sale." She told Hillock that she was lonely for his companionship and that she wanted to move to a less isolated resort. Hillock refused then because he believed that what he perceived as a premature move would reflect negatively on his career development.

In 1979 Hillock earned Sixty-five Thousand Dollars ($65,000.00). In March 1979 he accepted a position as a real estate salesman at Kiawah. The parties purchased a home at Kiawah with the proceeds of the sale of their home at Big Canoe. Their family life improved. After a few months, however, Hillock became absorbed in his business and spent long hours and weekends in the office. During his first full year at Kiawah, Hillock earned One Hundred Ten Thousand, Seven Hundred Forty-four Dollars ($110,744.00).

The parties agreed that their children would attend private school in Charleston. Each morning Voelker would clean house and leave for Charleston (a sixty mile round trip) by 7:15 a.m. Voelker spent the day in Charleston shopping, visiting friends, working on their business records and waiting for the end of the school day to drive the children back home. She turned down her husband's offer to hire someone to handle the children's transportation to Charleston and back. At the end of each weekday she was frazzled; and on the weekends Hillock worked.

Finally, in March 1982, Hillock decided to leave home because he had been unhappy for six years and because Voelker was angry with him as a result of his cancelling the family's scheduled trip to Disney World. He cancelled the vacation so that he could compete for sales of a new section of realty that was going on the market at Kiawah. Just before Hillock left home and again at trial, Hillock said that his priorities were his work, his children and his wife — in this order. In July 1982 Voelker returned to Canada with her children.

In 1982, Hillock earned One Hundred Sixty-seven Thousand, Five Hundred Five Dollars ($167,505.00) which included a one-time bonus of Thirty-five Thousand Dollars ($35,000.00). He testified that he anticipates earning approx-

imately One Hundred Thousand Dollars ($100,000.00) each year in commissions in the future. In 1982 he purchased several tax shelters which can be sold after 1989. The cost of these shelters is Ninety-eight Thousand Dollars ($98,000.00) and at trial he admitted that these shelters should have been shown on his financial statement as an asset.

Below is a summary of the parties' assets and the family court's division of them.

| Item | Total Value | Amount to Husband | Amount to Wife |
|------|-------------|-------------------|----------------|
| Cash from sale of Kiawah and Santee Homes[2] | $ 60,247.00 | $ 8,000.00 31,348.20 | $20,898.80 |
| Other Assets from Sale of Kiawah Home | | | |
| promissory note | 11,800.00 | 5,900.00 | 5,900.00 |
| lot in trade (net) | 26,860.00 | 26,860.00 | 0 |
| free rent | 9,600.00 | 9,600.00 | 0 |
| Honda Accord | 10,500.00 | 0 | 10,500.00 |
| Four Wheel Drive Jeep[3] | 16,000.00 | 16,000.00 | 0 |
| Kiawah Home Furniture | 18,000.00 | 0 | 18,000.00 |
| Santee Home Furniture | 6,000.00 | 6,000.00 | 0 |
| Merrill Lynch Account | 2,500.00 | 2,500.00 | 0 |
| SUB TOTAL | 161,507.00 | 156,208.20 | 55,298.80 |
| Tax Shelter Investments | 98,000.00 | 98,000.00 | 0 |
| TOTAL | $259,507.00 | $204,208.20 | $55,298.80 |

## I.

## Alimony

An award of alimony rests within the sound discretion of the trial judge. *Lide v. Lide*, 277 S. C. 155, 283 S. E. (2d) 832 (1981). The family court ordered Hillock to pay Seven Hundred Dollars ($700.00) per month for eighteen months as rehabilitative alimony. It did not award permanent alimony to Voelker . We find this omission to be an abuse of discretion.

According to the record Voelker might be able to earn up to Thirty Thousand Dollars ($30,000.00) per year if she could successfully complete retraining in the field of secretarial

---

[2] The trial court deducted Eight Thousand Dollars ($8,000.00) off the top of the house proceeds to compensate Hillock for the Eight Thousand Dollar ($8,000.00) proceeds from his condominium devoted to marital use early in the marriage. He then divided the cash 60 percent to Hillock and 40 percent to Voelker.

[3] This does not include a lien.

science. Even if Voelker could earn this figure, it would not support Voelker at the standard of living she had enjoyed during her marriage. Since 1980, Hillock has earned over One Hundred Thousand Dollars ($100,000.00) per year and until 1983 Voelker enjoyed the economic benefits that her husband's earning could provide.

Among the factors to be considered in determining whether alimony should be awarded are: (1) the financial condition of the husband and the needs of the wife; (2) the age and the health of the parties, their respective earning capacity, their individual wealth; (3) the wife's contribution to the accumulation of their joint wealth; (4) the conduct of the parties; (5) the respective necessities of the parties; (6) the standard of living of the wife at the time of the divorce; (7) the duration of the marriage; (8) the ability of the husband to pay alimony; and (9) the *actual* income of the parties. (Emphasis added).

*Lide v. Lide*, 277 S. C. 155, 157, 283 S. E. (2d) 832, 833 (1981).

We remand the alimony award for reconsideration in view of the factors listed in the *Lide* case.

## II.
### Equitable Distribution

Both parties appeal from the family court's order concerning equitable distribution. Voelker argues that their marriage represented an equal partnership. Hillock argues that Voelker should be awarded no more than 25 percent of the marital estate.

We remand the equitable distribution award. On remand the court should "make specific findings of fact concerning the relative incomes of the parties and what the material contributions of the parties have been to the acquisition of the marital property and the weight which the court accords those contributions." *Atkinson v. Atkinson*, 279 S. C. 454, 457, 309 S. E. (2d) 14, 16 (Ct. App. 1983).

On remand the family court shall set forth in its order each salient fact found by it to support the court's conclusions regarding whether Voelker is entitled to any interest in the tax shelters which Hillock purchased in 1982, or

stated another way, whether the tax shelters were legitimately excluded from the marital estate.

Marital property is all the property accumulated during the marriage as a result of the parties' marital efforts and endeavors. *Hussey v. Hussey*, 280 S. C. 418, 423, 312 S. E. (2d) 267, 270 (Ct. App. 1984). We note the uncontradicted testimony that Voelker suggested that the couple purchase tax shelters dating back to the time when Hillock was employed at Big Canoe. There is neither evidence of the date on which these shelters were purchased nor clear evidence of the source of the approximately Forty Thousand Dollars ($40,000.00) paid for these shelters in 1982.

### III.
### Annuity for Children's Education

The family court ordered the husband to set aside Three Hundred Dollars ($300.00) per month to purchase an annuity for the children's college education or post high school training. To sustain a requirement that a parent bear the expense of a child's college education there must be a showing that "(1) the characteristics of the child indicate that he or she will benefit from college; (2) the child demonstrates the ability to do well, or at least make satisfactory grades; (3) the child cannot otherwise go to school; and (4) the parent has the financial ability to help pay for such an education." *Risinger v. Risinger*, 273 S. C. 36, 39, 253 S. E. (2d) 652, 654 (1979). Accordingly, we find that the family court erred in requiring Hillock to provide an annuity for the children's education. We reverse this aspect of the family court's order.

### IV.
### Attorneys' Fees

An order awarding attorneys' fees must set forth specific findings of fact concerning: "(1) the nature, extent, and difficulty of the legal services rendered; (2) the time and labor necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the beneficial results accomplished; and (6) the fee customarily charged in the locality for similar legal

services." *Atkinson v. Atkinson*, 279 S. C. 454, 457-58, 309 S. E. (2d) 14, 16 (Ct. App. 1983).

Here, the family court required Hillock to pay Five Thousand Dollars ($5,000.00) in attorneys' fees less Six Hundred Dollars ($600.00) previously paid as attorneys' fees. We remand this issue because of insufficient findings of fact concerning the award. *See Johnson v. Johnson*, 341 S. E. (2d) 811 (S. C. Ct. App. 1986); *Wagner v. Wagner*, 285 S. C. 430, 329 S. E. (2d) 788 (Ct. App. 1985).

## V.
### Children's Transportation Expenses

On appeal Hillock argues that the family court erred by not requiring Voelker to pay a portion of the children's transportation expenses when they travel from Canada to South Carolina. At trial, Hillock agreed to pay these expenses. This court need not address a point on appeal which is manifestly without merit. Section 14-8-250, 1976 Code of Laws of South Carolina, as amended. We affirm the family court's order requiring Hillock to bear the children's transportation expenses.

For the above stated reasons, the order of the family court is

Affirmed in part, reversed in part, and remanded.

GOOLSBY, J., and LITTLEJOHN, Acting Judge, concur.