23527

John F. Floyd, Richard F. FLOYD, and Sara Floyd Powell, Individually and as Shareholders of the J.F. Floyd Mortuary, Inc., Appellants v. Elizabeth H. FLOYD, individually and as Executrix of the Estate of William Russel Floyd, deceased, William Russel Floyd, Jr., Susan H. Floyd and the J.F. Floyd Mortuary, Inc., Respondents.

(412 S.E. (2d) 397)

Supreme Court

*James B. Drennan, III,* and *T. Alexander Evins,* both of *Drennen, Shelor, Cole & Evins, P.A.,* Spartanburg, *for appellants.*

*Paul R. Hibbard* and *R. Ray Dennis,* both of *Johnson, Smith, Hibbard & Wildman,* Spartanburg, *for respondents.*

Heard Jan. 22, 1991.

Decided Dec. 9, 1991.

FINNEY, Justice:

This is an appeal from a circuit court order transferring the case to the non-jury calendar. We reverse and remand.

Appellants' father, John Gordon Floyd (Gordon), and his brother, William Russel Floyd (Russel), each owned 50% of the outstanding common stock of J.F. Floyd Mortuary, Inc. (corporation). Gordon died November 29, 1969, and in February of 1971, his executors agreed for his common stock to be redeemed by the corporation.

Appellants contend the stock redemption transaction included an agreement for the following: (1) a ten-year option, to expire March 1, 1981, for appellants to purchase up to 48% of the corporation' stock; and (2) an option for the corporation to purchase the outstanding corporation stock held by Russel during his lifetime or within fifteen months after Russel's death.

Thereafter and prior to March 1, 1981, appellants repurchased seven percent of the corporation's stock. Appellants contend the decision not to fully exercise their option was based on advice by an officer and agent of the corporation that the corporation would redeem Russel's stock upon his death so that appellants' seven percent would be the only stock outstanding.

Appellants allege that in 1982, the Board of Directors unilaterally and without consideration cancelled the corporation's option to purchase Russel's stock. Russel died on December 15, 1986. Appellants assert that they were not aware of the

option cancellation until notified by respondents in June of 1988 of a proposal to dissolve the company.

Appellants contend they were fraudulently manipulated by the respondents and deprived of the right to become substantial shareholders and owners of the corporation's sole outstanding stock as contemplated by the corporation's assurances given prior to March 1, 1981.

Appellants assert that on June 21, 1988, respondents who hold 93% of the outstanding stock, adopted a plan of liquidation and dissolution under which the operating assets of the corporation were transferred to the majority stockholder. Appellants allege that the corporation's offer to redeem their stock was below fair market value. According to appellants, the dissolution had no legitimate business purpose other than to oust appellants and redeem their stock at less than full market value.

Appellants instituted this action seeking to have the court (A) rescind cancellation of the corporation's option to purchase Russel's stock and require the corporation to exercise such option; (B) award compensation for actual damages appellants suffered as a result of improper acts and self-dealing by the respondents, enjoin execution of the Plan of Complete Liquidation and Dissolution and award appellants attorneys' fees; (C) award compensation for actual and punitive damages as a result of conspiracy on the part of respondents; (D) rescind appellants' waiver of their option to purchase additional shares and resurrect their right to acquire additional stock in an amount sufficient to give appellants a 48% interest in the corporation; (E) ascertain the fair market value of appellants' shares and require redemption at such value by the corporation; (F) appoint a receiver to dissolve the corporation, sell its assets, and distribute the proceeds to the shareholders pro rata; and (G) award the costs of the action.

Respondents denied the material allegations of wrongdoing; asserted that the corporation was lawfully liquidated pursuant to a valid plan of liquidation, that appellant's action was barred by estoppel and the doctrine of laches; and that the complaint failed to state causes of action for fraud, rescission or receivership. Respondents moved to have the case either referred to the master-in-equity or transferred to the non-

jury calendar. The trial judge transferred the case to the non-jury calendar, finding the primary purpose of the suit to be equitable in nature but with the caveat that even if convinced otherwise, he would still refer to the master-in-equity and/or for trial non-jury the complex claims for damages pursuant to Rule 53(b), SCRCP.

On appeal appellants contend the trial court erred in determining that appellants are not entitled to a jury trial on legal issues asserted. We agree.

The trial court, in its analysis, cited in support of its utilization of the "main purpose rule" this Court's decisions in *Baughman v. AT&T*, 298 S.C. 127, 378 S.E. (2d) 599 (1989); *Collins Music Co., Inc. v. Lightsey*, 285 S.C. 108, 328 S.E. (2d) 477 (Ct. App. 1985); *Johnson v. South Carolina Nat'l Bank*, 285 S.C. 80, 328 S.E. (2d) 75 (1985); and *Insurance Financial Services, Inc. v. South Carolina Insurance Co.*, 271 S.C. 289, 247 S.E. (2d) 315 (1978). The trial judge considered the lawsuit in its entirety, determined that any damages would be secondary to and dependent upon the overriding equitable relief sought, and concluded that the entire case should be tried in a court of equity.

In a line of cases dating back almost a century our Court has held, with only slight modifications, that where the issues raised by pleadings are partly equitable, it is not error to deny a motion to have all the issues tried by jury, though the right exists to have purely legal questions so tried. *City Council of Greenville v. Ormond*, 44 S.C. 119, 21 S.E. 642 (1895). Even in a case in equity if, during the trial of such case, any question should arise which a party is entitled to have determined on the law side of court, such determination should be had. *Spencer v. National Union Bank*, 192 S.C. 355, 6 S.E. (2d) 755 (1940). Where legal and equitable issues and rights are asserted in the same complaint, legal issues are for determination by a jury and equitable issues for the judge sitting as chancellor. *Winter v. U.S. Fidelity & Guaranty Co.*, 240 S.C. 561 126 S.E. (2d) 724 (1962). In *Airfare, Inc. v. Greenville Airport Comm'n* 249 S.C. 265, 153 S.E. (2d) 846 (1967), this Court directed that legal and equitable issues be separated and tried by the appropriate branches of court.

Concurrent with the preceding holdings, the "main purpose" rule evolved from a determination that where a plaintiff has prayed for money damages in addition to equitable relief, characterization of the action as equitable or legal depends on the plaintiff's "main purpose" in bringing the action. *Baughman v. AT&T, supra; Johnson v. South Carolina Nat'l Bank, supra; Collins Music Co., Inc. v. Lightsey, supra; Insurance Financial Services, Inc. v. South Carolina Insurance Co., supra; Bramlett v. Young,* 229 S.C. 519, 93 S.E. (2d) 873 (1956); *Ogilvie v. Smith,* 215 S.C. 300, 54 S.E. (2d) 860 (1949); and *Alford v. Martin,* 176 S.C. 207, 180 S.E. 13 (1935).

We are concerned that, as courts have sought to ascertain the "main purpose" of lawsuits, the pendulum appears to have swung with steadied progress toward decisions tending to place within the sole purview of the equity judge issues properly triable only by jury. *See* Rule 38, SCRCP; and *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S. Ct. 948, 3 L. Ed. (2d) 988 (1959).

As we interpret the "main purpose" rule, its primary function is to administratively categorize an action in which parties seek both equitable relief and legal redress. When properly applied, the "main purpose" rule reduces the complexity of litigation and does not deprive litigants of the right to a jury trial where appropriate.

With a view toward harmonizing the case law on this issue, we reiterate our pre *Johnson, Collins* and *Baughman, supra,* rulings and adopt the more recent holding of the South Carolina Court of Appeals that in instances where legal and equitable issue or rights are asserted in the same complaint, the legal issues are for determination by a jury and the equitable issues are to be decided by the court. *Island Car Wash, Inc. v. Norris,* 292 S.C. 595, 358 S.E. (2d) 150 (Ct. App. 1987). The trial judge may either hear the equity case himself or issue a compulsory order of reference. *Ogilvie v. Smith, supra.*

Accordingly, this case is reversed and remanded.

Reversed and remanded.

GREGORY, C. J. and HARWELL, CHANDLER and TOAL, JJ., concur.