2134

Harold E. SMITH, Carl F. Smith and Jerry R. Smith, Respondents v. COM-
MISSIONERS OF PUBLIC WORKS OF the CITY OF CHARLES-
TON, a Corporate Body Politic, and Jay H. McDowell and Bankers Trust
Company, as Trustees under the Will of Benjamin R. Kittredge, of whom
Commissioners of Public Works of the City of Charleston, a Corporate
Body Politic is the Appellant.

(441 S.E. (2d) 331)

Court of Appeals

*Lucas C. Padgett, Jr., Donald M. Williams* and *Karen C. Jackson* all of *McNair & Sanford,* Charleston, *for appellant.*

*Capers G. Barr, III,* of *Barr, Barr & McIntosh* and *Grover C. Seaton, III,* of *Walter Bilbro & Associates,* Charleston, *for respondents.*

Heard Dec. 9, 1993.

Decided Feb. 7, 1994.

CURETON, Judge:

This is a declaratory judgment action involving the interpretation of a written agreement. In the action, respondents, Harold E. Smith, Carl F. Smith and Jerry R. Smith (Smiths), ask the court to declare that they have an easement to cross the land of appellant, Commissioners of Public Works of the City of Charleston (CPW). The master granted the relief sought by the Smiths and CPW appeals. We affirm as modified and remand.

The Smiths and CPW are adjacent land owners in Berkeley County. They are subsequent grantees of Benjamin R. Kittredge who originally received the easement in question from Bushy Park Authority, CPW's predecessor in title. The ease-

ment agreement arose out of an impending condemnation action. In 1955, Bushy Park Authority needed to acquire land belonging to Kittredge to construct a canal leading from the Cooper River to the Back River. To avert condemnation, Kittredge and Bushy Park entered into an agreement whereby Kittredge deeded 427 acres to Bushy Park. Simultaneous with the conveyance, Kittredge and Bushy Park entered into the agreement at issue.

Article II of the agreement contains the provision in dispute:

> Kittredge and all future owners of Dean Hall Plantation and Cypress Gardens shall have the right, and the same is hereby granted to them, of ingress, egress and regress to the banks of and across the canal about to be constructed, leading from the Cooper River to Back River, at any point contiguous to the lands being conveyed by Kittredge to the Authority.

Article III of the agreement requires CPW to limit the use of the canal as follows:

> The Authority shall at all times prohibit shooting, hunting, fishing, or trafficking (sic), by use of outboard motors, or otherwise, in the said canal south of the viaduct [bridge] over same, . . . which . . . would be detrimental to the desired central quiet atmosphere of Cypress Gardens. . . .

The bridge (viaduct) mentioned in Article III is about 250 yards north of the Smiths' property but is not adjacent (contiguous) to their land. A highway leads from the Smiths' land to the bridge. The access the Smiths seek to the canal over CPW's land is south of the bridge.

Prior to his death, Kittredge deeded approximately 500 acres to his trustees to be disposed of upon his death pursuant to his will. This acreage was the remaining part of what was known as "Dean Hall Plantation." After Kittredge's death, the trustees sold approximately 71.45 acres from this tract to the Smiths.

The Smiths brought this action seeking a declaration of easement rights under Article II of the agreement. CPW answered, contending the Smiths were not entitled to an easement across

its property under the agreement because the purpose of the 1955 agreement, which was to afford Kittredge and his successors access to the canal, had been satisfied with the construction of a bridge over the canal in 1956, and the subsequent construction of a boat landing dock nearby.[1] Thus, any easement rights granted under the 1955 agreement, they argue, terminated with the construction of the bridge and dock.[2]

The parties consented to an order of reference for final judgment with direct appeal to the Supreme Court, and conceded to the master that the matter at issue was fundamentally one of document interpretation. The master found: (1) the parties' agreement contemplated construction of the bridge; (2) the agreement was "clear and unambiguous" and granted the Smiths, as successors to Kittredge, the right to cross CPW's land "at any point" contiguous to the lands conveyed; (3) the agreement "clearly contemplat[ed]" that Kittredge's successors would "frequently cross" CPW lands and that they could do so "at any place" along the canal strip; and (4) the Smiths clearly are within the class of "future owners of Dean Hall Plantation" and, therefore, had easement rights over CPW's land.

Accordingly, subject to possible wetlands questions not at issue on appeal, the master ordered CPW to afford the Smiths rights of access over and across CPW's land "for the purpose of ingress, egress and regress to the banks of and across the Canal, held and owned by Defendant CPW, at such places as the Plaintiffs [Smiths] deem reasonable and necessary for the enjoyment of their property." Implicit in this holding is that "at any point" means several points rather than one point.

CPW first argues that the case before us sounds in equity because its main purpose is to determine the extent of the grant of an easement and, thus, we may

---

[1] The Smiths testified they use the boat ramp frequently for access to the canal.

[2] When an easement is implied by necessity, courts in other jurisdictions have held that the easement ceases at the time the necessity no longer exists. We have been unable to locate a South Carolina case that holds such. 12 S.C. Juris. *Easements* § 31. Here, however, the instant easement is expressly created by grant and the rules relating to implied easements of necessity do not apply. It is also worth noting that the agreement itself contemplated the construction of the bridge. Moreover, none of the bases for termination of an appurtenant easement appear to apply in this case. *See* 12 S.C. Juris. *Easements* §§ 29-34.

take our view of the preponderance of the evidence. On the other hand, the Smiths argue this case involves the determination of the existence of an easement which is a question of fact in a law case. While we agree with the Smiths that the pleadings and evidence in this case present the primary issue of whether or not the agreement creates an easement in favor of the Smiths, they also present the question of the extent or scope of the easement. "[T]he determination of the *existence* of an easement is a question of fact in a law action" and subject to an any evidence standard of review when tried by a judge without a jury. *Jowers v. Hornsby,* 292 S.C. 549, 551, 357 S.E. (2d) 710, 711 (1987). However, the determination of the extent of a grant of an easement is an action in equity. *Moore v. Reynolds,* 285 S.C. 574, 577, 330 S.E. (2d) 542, 544 (Ct. App. 1985). Thus, we may take our view of the evidence on the latter issue. *Townes Assoc., Ltd. v. City Council of Greenville,* 266 S.C. 81, 221 S.E. (2d) 773 (1976); *see also Floyd v. Floyd,* 306 S.C. 376, 412 S.E. (2d) 397 (1991) (for treatment of cases containing both legal and equitable issues).

CPW next argues the master erred in finding the agreement was clear and unambiguous. We agree. An ambiguous agreement is one capable of being understood in more ways than one, an agreement obscure in meaning, through indefiniteness of expression, or containing words having a double meaning. *Carolina Ceramics, Inc. v. Carolina Pipeline Co.,* 251 S.C. 151, 155-56, 161 S.E. (2d) 179, 181 (1968); *Proffitt v. Sitton,* 244 S.C. 206, 136 S.E. (2d) 257 (1964). We agree with CPW that the "future owners of Dean Hall Plantation" and "any point" language in the agreement are clearly ambiguous when considered in the context of the agreement. We conclude, however, such a ruling does not require a blanket reversal of the master on other issues raised in this appeal.

The parties appear to disagree as to whether the language of Article II creates an easement or a restrictive covenant. An easement is the right of one person to use the land of another for a specific purpose. *Steele v. Williams,* 204 S.C. 124, 28 S.E. (2d) 644 (1944). An easement is characterized as either appurtenant, in gross, or in gross for commercial purposes. 12 S.C. Juris. *Easements* § 3. A restrictive covenant, of the nature involved here, is contractual in nature and restricts in some particular the free use of land by its owner. *See*

cases collected under West's *S.C. Digest, Covenants,* Vol. 7. Restrictive covenants are commonly created by a declaration of restrictive covenants, which is executed and recorded in the same manner as a deed. 17 S.C. Juris. *Covenants* § 8.

Whether a grant in a written instrument creates an easement and the type of easement created are to be determined by ascertaining the intention of the parties as gathered from the language of the instrument; the grant should be construed so as to carry out that intention. *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 143 S.E. (2d) 803 (1965); 23 Am. Jur. (2d) *Easements and Licenses* § 23 (1966) (if the language is uncertain or ambiguous in any respect, all surrounding circumstances, including the construction which the parties have placed on the language, may be inquired into and taken into consideration by the court). Without objection, both parties introduced evidence concerning the meaning of the language of the agreement and the circumstances surrounding the execution of the agreement. Although we find the agreement ambiguous, we nonetheless hold the evidence supports the master's conclusion that Article II of the 1955 agreement creates an easement. We also conclude that Article III was intended to be a restrictive covenant.

CPW next argues the master incorrectly ruled the Smiths were "future [owner(s)] of Dean Hall Plantation [or] Cypress Gardens." It claims the master's construction overlooks the intended distinction drawn by Kittredge and Bushy Park between "owners of Dean Hall Plantation or Cypress Gardens and all the [other] parcels of land conveyed by Kittredge to the Authority which includes successors of both Kittredge and Bushy Park." This claim has no merit. The Smiths' land was a part of the Dean Hall Plantation at the time the agreement was entered into.[3] Any subsequent change in or renaming of a portion of the land upon a subdivision of the Dean Hall Plantation does not have the effect of voiding the easement. *See Steele v. Williams,* 204 S.C. 124, 28 S.E. (2d) 644 (1944) (an appurtenant easement right adheres to the dominant estate *and* every subdivision thereof).

---

[3] The deed from Kittredge's Trustees to the Smiths recites the sixth paragraph of Kittredge's will which states the subject property is part of a 500-acre tract, "the remaining part of what was known as Dean Hall Plantation."

CPW also complains of the failure of the master to denominate the instant easement as one in gross.[4] The subject easement was created by an express grant. The general rule is that the character of an express easement is determined by the nature of the right and the intention of the parties creating it. 25 Am. Jur. (2d) *Easements and Licenses* § 13 (1966). Nevertheless, the rule in South Carolina appears to be that an easement must be necessary to the enjoyment of the dominant estate to be appurtenant. 12 S.C. Juris. *Easements* § 3.

We hold the language of the agreement is evidence supporting the master's conclusion that the agreement establishes an easement appurtenant between dominant ("future owners of Dean Hall Plantation") and servient (CPW) estates. The intent of the parties seems clear given the "future owners" language of Article II and the binding successors language of Article XI.[5] The "impending condemnation" circumstances of the agreement and a 1955 letter from Kittredge's lawyer to Bushy Park's corporate secretary support the conclusion that Kittredge wanted to retain the right to cross CPW's land to enjoy the water and his other land. It is also clear that he intended by the language employed to attach the attribute of assignability (alienability) to the easement. *Sandy Island Corp. v. Ragsdale, supra;* 25 Am. Jur. (2d) *Easements and License* § 13 (1966) (easements in gross are not favored by the courts, and an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate).

There is clearly no merit to CPW's contention that much significance should be placed on the failure of the Smiths to mention the agreement in the deed from Kittredge's Trustees to the Smiths. The absence of any mention of the easement agreement in the deed is not relevant. The 1955

---

[4] An easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer. *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 143 S.E. (2d) 803 (1965). In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. *Id.* at 806. It also passes with the dominant estate upon conveyance. *Carolina Land Co., Inc. v. Bland, infra.*

[5] This Article provides that the terms of the agreement are binding upon the parties, their successors and assigns.

agreement clearly contemplates granting the easement to "future owners" and binds CPW as a successor to Bushy Park Authority. The easement runs with the land of the dominant (Smiths') estate although the "conveyance of the dominant estate does not expressly mention it." *Carolina Land Co., Inc. v. Bland*, 265 S.C. 98, 217 S.E. (2d) 16 (1975). Moreover, the deed in question states following the property description that there is also granted "all and singular, the rights, members, hereditament and appurtenances to the said premises belonging, or in anywise incident or appertaining." Such language evidences the intent of the grantors "to grant [to the Smiths] all rights essential to the enjoyment of the premises conveyed." *Brasington v. Williams*, 143 S.C. 223, 141 S.E. 375 (1927).

The principal issue on appeal is whether the language in the agreement relating to "any point" means more than one point. We agree with the master that the term "any point" may mean more than one point. As pointed out in *Pursley v. Inman*, 215 S.C. 243, 248, 54 S.E. (2d) 800, 802 (1949):

> the word "any" is a word of comprehensive meaning and is frequently used in the sense of "all or every", but like all other general words, its meaning is frequently restrained and limited by the subject which it qualifies. [citing *Tuten v. Bowden*, 173 S.C. 256, 175 S.E. 510 (1934).]

The subject unlocated easement must be interpreted, however, in light of good faith, reasonableness and what was necessarily the intent of the parties to the 1955 agreement. *Hill v. Carolina Power & Light Co.*, 204 S.C. 83, 28 S.E. (2d) 545 (1944) (an easement in general terms is limited to a use which is reasonably necessary and convenient and as little burdensome to the servient estate as possible for the use contemplated). In determining the extent of the easement (number of access points or routes), consideration must be given to what is essentially necessary to the enjoyment of the Smiths' property. *Sandy Island Corp. v. Ragsdale, supra; Carolina Land Company v. Bland*, 265 S.C. 98, 217 S.E. (2d) 16 (1975); *Jacobs v. Service Merchandise Co.*, 297 S.C. 123, 375 S.E. (2d) 1 (Ct. App. 1988); 12 S.C. Juris. *Easements* § 20.

In view of the subdivision of Dean Hall Plantation, we hold it is not reasonable to interpret the agreement to say that Kit-

tredge and Bushy Park intended that each owner of any portion of the Plantation, no matter how small his portion, would have his own private unlimited access to the canal as long as his land was contiguous to CPW's land. *Cf. Patterson v. Duke Power Co.,* 256 S.C. 479, 183 S.E. (2d) 122 (1971) (where deed grants right of way but does not fix its width, the matter of width is considered in light of what is "convenient and necessary to accomplish purpose for which way was created ..."); *see also* 25 Am. Jur. (2d) *Easements and Licenses* § 64 *et. seq.*

We, therefore, hold the Smiths are only entitled to such access across CPW's property as is reasonably necessary to full enjoyment of their property. Here, however, the master did not consider whether or not it was necessary that the Smiths have multiple access to the canal across the land of CPW to fully enjoy their property. Additionally, although, we have found no South Carolina case that specifically says so, the general law is the owner of the servient estate has the right, in the first instant, to designate the location of an undesignated easement. *Abdalla v. State Highway Comm'n,* 261 N.C. 114, 134 S.E. (2d) 81 (1964); 25 Am. Jur. (2d) *Easements and Licenses* § 66 (1966); *see Marlow v. Marlow,* 284 S.C. 155, 325 S.E. (2d) 703 (Ct. App. 1985); Annot., 24 A.L.R. 4th 1053 (1983). We, therefore, remand to the master for resolution the number of access points the Smiths are entitled to, and to establish the access point or points (routes), to include their width. *See* 25 Am. Jur. (2d) *Easements and Licenses* § 68 (1966). By way of direction to the trial court, we in no way hold that the Smiths are entitled to multiple access points across CPW's land if one point is reasonably sufficient to enable them to fully enjoy their property.

The decision of the master is affirmed as modified. All other issues raised by CPW and not discussed herein are found to be manifestly without merit and we affirm the master pursuant to Rule 220(b)(2), SCACR; S.C. Code Ann. § 14-8-250 (Supp. 1993) and *Voelker v. Hillcock,* 288 S.C. 622, 344 S.E. (2d) 177 (Ct. App. 1986).

Affirmed as modified and remanded.

HOWELL, C.J., concurs in part, and dissents in part; GOOLSBY, J., concurs.

HOWELL, Chief Judge (concurring in part, dissenting in part):

I concur in the majority's characterization of Article II, finding the language creates an easement. I disagree, however, with the finding that the easement is unlocated and undelineated necessitating a further determination by the master as to the number of access points to and across the canal. It is my opinion that the master sufficiently sets forth the scope of the easement and further findings are unnecessary.

Article II creating the easement grants "all future owners of Dean Hall Plantations and Cypress Gardens . . . the right . . . of ingress, egress and regress *to the banks of and across the canal* about to be constructed . . . at any point[.]" (Emphasis added.) The majority holds the language "at any point" creates an ambiguity capable of more than one understanding and, therefore, requires the master to make additional findings as to whether the Smiths, by agreement, are granted multiple access points to the canal and across the lands of CPW. I disagree.

The cardinal rule of construction is to ascertain the intention of the parties. *Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 143 S.E. (2d) 803 (1965). The easement, therefore, should be construed so as to carry out the intention of the parties.

Article II creates in all *future owners of Dean Hall Plantation an easement* that would afford them full enjoyment of the canal and banks contiguous to their property. Reviewing the agreement in its entirety, the intention of the parties appears to be *the creation of unrestricted and unencumbered use in a* manner consistent with unrestricted and unencumbered ownership of the fee on both sides of the waterway. It is my opinion that the words "to the banks of and across" intended to grant *full enjoyment restricted only by Article III* which prohibits activity that would disturb the quiet enjoyment of the banks and waterway, *i.e.*, the use of outboard motors or shooting.

I would, therefore,

Affirm as modified.