LAKE COLLEEN ENTERPRISES, INC., Appellant,

v.

ESTATE OF Michael Raymond MARK, Marguerite E. Biscoe, Personal Representative of the Estate of Michael Raymond Mark, and Ray Mark, Sr., Individually, Appellees.

No. S–7759.

Supreme Court of Alaska.

Dec. 26, 1997.

Rehearing Denied Feb. 24, 1998.

William R. Satterberg, Jr., The Law Offices of William R. Satterberg, Jr., Fairbanks, for Appellant.

Daniel E. Winfree, Winfree Law Office, Fairbanks, for Appellee Biscoe.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

MATTHEWS, Justice.

I. *INTRODUCTION*

Public access easements are easements reserved by the state to ensure access to state land and water. The question here is whether a dedicated public access easement may be used as an access way for an adjoining private parcel. We answer in the affirmative, because the state had an interest in the adjoining parcel when the easement was created, and the right to use the easement was not destroyed when the state's interest was terminated.

II. *FACTS AND PROCEEDINGS*

The Estate of Michael Raymond Mark (Mark) administers a fourteen-acre parcel in Healy adjacent to a seven-acre parcel owned by Lake Colleen Enterprises (Colleen). Both parcels have frontage on the Parks

Highway, and Colleen's southern boundary is adjacent to another road. *See* Appendix.[1]

Beginning in January 1982, Mark leased his parcel from the state under the now repealed Remote Parcel Program. The leased land was subject to "[a] 25 foot wide access easement along all lot lines." Mark's property was platted in 1987. The plat showed a twenty-five-foot public access easement along all boundaries except the boundary with the Parks Highway. A plat note stated that "all remote parcels are subject to a 25 foot public access easement along all upland boundaries."[2] Mark obtained title to his parcel from the state in 1991, "subject to platted easements and reservations." The 979–foot southern boundary of Mark's lot forms the northern boundary of Colleen's lot.

In 1983 Colleen's predecessors contracted to buy from the State of Alaska what is now Colleen's lot. The contract called for a twenty-one year pay out, and the state retained legal title to the property until the contract price was fully paid. The state transferred title to Colleen's immediate predecessor in 1995. That same year Colleen purchased the property.

A hotel was constructed on Colleen's property. In April 1995 Colleen cleared the twenty-five-foot easement on the Mark lot and put in a gravel drive. Colleen uses this drive for access to the rear of the hotel and to maneuver trucks making deliveries to the hotel. In response, Mark built a fence on the boundary, blocking most of Colleen's access from the easement; however, Mark left a twenty-five-foot wide opening in the fence for access to the Colleen property. Parts of the fence were later torn down.

Colleen sued Mark to enjoin interference with its access along the easement. Mark counterclaimed, seeking injunctive relief barring Colleen from using the easement and seeking damages for, among other things, trespass and conversion of timber and gravel. After the parties settled the damages claims, Mark moved for summary judgment. The court granted the motion, holding that the easement only permits access to state land and navigable or public waters, not to the Colleen property. Final judgment was entered in accordance with the order granting summary judgment. Colleen appeals.

## III. *DISCUSSION*

The parties generally agree that there are three statutory sections and two regulatory sections which are potentially relevant to the resolution of this case. They are:

AS 38.04.050:

Wherever state land is surveyed for purposes of private use, legal rights-of-way and easements shall be reserved for access and, where appropriate, for utility services to each parcel of land. A right-of-way or easement shall be located to assure adequate and feasible access for the purposes for which the right-of-way or easement was intended. Where necessary and appropriate for the use intended or where required by local subdivision ordinances, the director shall arrange for the development of surface access as part of the land availability program. The direct cost of local access development shall be borne by the recipient of the land unless otherwise provided by state statutes or regulations.

AS 38.04.055:

The director shall reserve easements and rights-of-way on and across land which is made available for private use as necessary to reach or use public water and public and private land. An easement or right-of-way reserved under this section may include trails that have an established history of use for commerce, recreation, or transportation.

AS 38.04.058:

The director may, under terms agreed to in writing by a grantee, lessee, or interest holder of state land, restrict the use of an easement or right-of-way reserved under

---

1. The lot numbered ASLS 87–23 is the Mark property. The lot numbered ASLS 83–42 is the Colleen property.

2. The plat also contains a dedication signed by the Director of the State Division of Land and Water Management: "I hereby . . . dedicate for public or private use as noted, all easements . . . as shown and described hereon."

AS 38.04.050, 38.04.055 or other law in order to protect public safety or property.

11 AAC 53.300:

This section governs easements and rights-of-way other than those for public access to and along navigable and public water. All easements and rights-of-way reserved under this section must be surveyed and platted to the accuracy of the adjacent survey, or to Class III survey standards, if there is no adjacent survey. Except as otherwise provided by law, easements reserved under this section are vested in the public. Easements and rights-of-way of at least the following widths must be surveyed and shown on the plat. When in the public interest, the director may require the survey and platting of additional easements or rights-of-way, or waive these requirements at the time that survey instructions are issued.

(1) Public Access Easements.

(A) The section line easement is 50 feet wide on the state side. If the state is the owner on both sides, then it is a total of 100 feet wide.

(B) The easement for an existing road or trail that does not already have a reserved easement or right-of-way is 30 feet on each side of the centerline of the road or trail.

(2) Utility easements are 20 feet wide, unless a need is demonstrated for a wider easement at time of survey and platting.

(3) Pedestrian easements are 20 feet wide, unless a need is demonstrated for an easement of a different width at the time of survey and platting.

(4) For any control stations set by the United States Coast and Geodetic Survey, Bureau of Land Management, United States Geologic Survey, United States Corps of Engineers, National Geodetic Survey, the division, or private surveyors to at least Class I standards, easements must be created for access to the control station from the nearest practical property boundary. There must be an easement with a radius of five feet around the control station, a pedestrian access easement five feet wide from the nearest practical property boundary to the control station,

and, where applicable, a five-foot-wide direct line-of-sight easement from the control station to other control stations.

(5) Other easements, as necessary, will be determined at the time of survey.

(6) Rights-of-way for arterials must be a minimum of 100 feet wide; rights-of-way for residential roads must be a minimum of 60 feet wide; and other right-of-way widths, as necessary, will be determined at the time of survey.

11 AAC 53.900(25):

Unless the context clearly indicates otherwise, in this chapter

. . . .

(25) "public access easement" means an easement retained by the state at the time of disposal of state land, to insure continued access to state land and access to and along navigable or public water[.]

The trial court's decision was based on the definition of "public access easement" set forth in 11 AAC 53.900. The court ruled that the easement on the Mark property was

for access to State land and access to and along navigable or public water. Lake Colleen is not using the easement for access to or along navigable or public water or for access to State land. Lake Colleen is using the easement for access to its own property. This exceeds the scope of the reservation in the Mark patent.

Colleen argues that this interpretation too narrowly defines the scope of the easement. Citing the "plain language" of AS 38.04.050 and .055, Colleen argues that the easement must have been intended to ensure access to "each parcel of land" as stated in section .050, including "private land" as stated in section .055. Colleen finds support in the language of section .058, which gives the director authority to restrict the use of an easement reserved under sections .050 or .055, noting that no restriction was imposed in this case. Colleen argues that 11 AAC 53.900(25), the regulation defining the term "public access easement," is invalid inasmuch as it does not refer to access to each parcel of land or public and private land as AS 38.04.050 and .055 require.

Mark argues that the statutory directions of sections AS 38.04.050 and .055 are discretionary. The director is required to reserve easements as appropriate or necessary for access to each parcel of land and to reach public water and public and private land. Here the reservation of access to the Colleen property was not necessary since the Colleen property was already accessible from the Parks Highway and another road. Thus, in this case, literal adherence to the definition of public access easement creates no conflict with the statutory sections.

In our view, the fact that the definition of "public access easement" does not refer to easements whose purpose is to ensure access to private land does not render the definition inconsistent with the statutory sections, so long as there is other regulatory authority authorizing the director to reserve easements affording access to private land. Sections .050 and .055 require easements where necessary or appropriate for access to private land, but the easements do not have to be called "public access easements." The director has the authority to reserve easements to private land under 11 AAC 53.300(5), which authorizes "other easements, as necessary." [3]

■ We thus accept the definition of "public access easement" as governing the scope of this easement. Nonetheless, in order to conclude that the easement does not provide access to the Colleen property, it is necessary to answer two questions. First, was the Colleen property "state land" within the meaning of 11 AAC 53.900(25) at the time the public access easement was created? Second, if the answer to the first question is affirmative, does state land which is served by a public access easement lose the benefit of the easement upon becoming private land? For the reasons that follow, we conclude that the Colleen property was "state land" at the

time the easement was created, and that it did not lose the benefit of the easement upon becoming private land.

■ At the time of the survey of the Mark property and the creation of this easement in 1987, the Colleen property had already been conveyed by the state under a contract of sale to Colleen's predecessors. However, legal title remained in the state. If the purchaser had defaulted, the state would have also been entitled to equitable title. In our view retention of legal title in the state suffices to qualify lands subject to a contract of sale as "state land" within the meaning of the definition of "public access easement." Given the possibility of default in the contract of sale and forfeiture of the lands to the state, the same reasons which make it desirable to ensure access to land wholly owned by the state apply to lands to which the state has only legal title. Otherwise, a confusing patchwork of access rights to public roadways could be created where some parcels of state land, or former state land, have access to a road, but others do not, depending on whether and when parcels have been sold and forfeited.

■ Further, access once granted under a public access easement to state land should not be lost once the state conveys full title to a private owner. Such a result would have the potential to diminish the value of the property to be conveyed and thus the consideration which the state would receive. It would also have the potential to eliminate the only legal or practical access to a given parcel.

■ We conclude, therefore, that the superior court erred in concluding that the public access easement on the Mark property may not be utilized for access to or from the Colleen property. This conclusion does not mean, however, that Colleen may drive on and off the easement at any point along the

---

**3.** We observe, however, that the usage in 11 AAC 53.300 of the term "public access easement" is broader than that term as defined in 11 AAC 53.900(25). Under section .300(1), a "public access easement" includes section line easements and easements for existing roads or trails. Section line easements and easements for existing roads or trails do not exist merely to ensure continued access to state land and waters; they

often serve private lands as well. This inconsistency suggests that either the definition of "public access easement" is too narrow or that another regulatory category is needed to describe easements whose purpose is to serve private and public property. However, this possible inconsistency does not affect the outcome of this case and does not need to be resolved at this time.

shared boundary. Easement usage must be reasonable and appropriate to the nature of the land and the purpose of the easement. *See Andersen v. Edwards,* 625 P.2d 282, 286–87 (Alaska 1981) (holding that express easement does not grant absolute right to use easement; use must be reasonable); *Smith v. Commissioners of Public Works,* 312 S.C. 460, 441 S.E.2d 331, 336–37 (S.C.App.1994) (holding that express easement granting access at "any point" necessarily grants only reasonable access points).

## IV. CONCLUSION

Since Colleen's land was state land at the time of the survey of the Mark property, the Colleen property is one of the properties that the easement was intended to serve. Consequently, the trial court erred in enjoining Colleen's use of the easement for access to its property. The judgment is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.