649 S.E.2d 92

**Peter C. PLOTT and Demitria C. Votta, Respondents,**

v.

**JUSTIN ENTERPRISES, a South Carolina General Partnership, Russ Pye, and Lee Pye, Appellants.**

No. 4258.

Court of Appeals of South Carolina.

Heard May 7, 2007.
Decided June 18, 2007.
Rehearing Denied Aug. 24, 2007.

506

Eugene P. Corrigan, III, and Michael A. Timbes, both of Charleston, for Appellants.

Marvin I. Oberman and Harold A. Oberman, both of Charleston, for Respondents.

GOOLSBY, J.

Justin Enterprises, Russ Pye, and Lee Pye (collectively Appellants) appeal an order holding their actions interfered with the right of Peter C. Plott and Demitria C. Votta (collectively Respondents) to use an easement and directing them to cease these actions. In addition, Appellants contend the trial judge erred in refusing to apply res judicata or collateral estoppel to bar Respondents' suit. We affirm.

## FACTS

Encampment Plantation is an 852–acre tract of land in Charleston County. Robert Lawson Horner and Lisa J. Horner owned 64.57 acres of real property known as "Tract 1" in Encampment Plantation. In April 1994, the Horners obtained the approval of the Charleston County Planning Board to subdivide Tract 1. As part of the process, they agreed to dedicate a fifty-foot wide right-of-way easement known as "Encampment Plantation Drive" in between the two new tracts, known as "Tract 1A" and "Tract 1B," respectively.[1] On April 20, 1994, they recorded a plat showing Tracts 1A and 1B, as well as Encampment Plantation Drive.

On May 12, 1994, the Horners conveyed Tract 1B to Myrtis M. Jenkins, Lisa Horner's mother. Jenkins immediately sold the tract to Susan Dillard, who eventually deeded it to Respondents. Each deed contains the following pertinent language creating an easement for the benefit of Tract 1B:

> TOGETHER with a perpetual, non-exclusive, appendant and appurtenant easement for ingress and egress upon, over and across that certain 2.22 acre 50' right-of-way known as "ENCAMPMENT PLANTATION DRIVE"....
> This easement is for the commercial and economic benefit of

---

1. Within Encampment Plantation Drive lies an existing avenue that serves other properties in the area.

[Tract 1B] and is appurtenant to and transferable with the title to said [Tract 1B].

On December 29, 1994, the Horners conveyed both Tract 1A and Encampment Plantation Drive to Appellants, with the following language in the property description:

SAID PROPERTY IS CONVEYED SUBJECT to the ingress and egress easement over and across that certain 2.22 acre 50' right-of-way known as Encampment Plantation Drive granted to Susan P. Dillard by deed of Myrtis M. Jenkins....

Encampment Plantation Drive provides access to Highway 17 from various properties within Encampment Plantation. From Highway 17, a traveler would turn onto Encampment Plantation Drive and proceed north. Several hundred feet from Highway 17, Tract 1A would lie to the west and Tract 1B to the east of Encampment Plantation Drive. Encampment Plantation Drive ends at a cul-de-sac. Tract 1B fronts the eastern side of Encampment Plantation Drive for approximately 451 feet.

In 1997, Appellant Justin Enterprises instituted an action against Respondents, alleging Respondents trespassed on Tract 1A and removed timber. Respondents answered and asserted several counterclaims for trespass and interference with their use of Tract 1B.[2] On March 14, 2000, Respondents moved to amend their answer and assert additional counterclaims. Of relevance to this appeal is Respondents' attempt to claim Justin Enterprises placed stakes along the eastern boundary of Encampment Plantation Drive and set a log within the cul-de-sac. Respondents further argued these actions interfered with their use of the easement.

The trial court denied Respondents' motion to amend, emphasizing the motion was made approximately one month before the trial scheduled for April 17, 2000. At trial, Respon-

---

**2.** The counterclaims included allegations that (1) Justin Enterprises prevented Respondents and those hired by them from performing work on Respondents' property; (2) Justin Enterprises trespassed on and damaged Respondents' property by constructing and maintaining an underground power line without permission; and (3) the maintenance of a pond and ditch system by Justin Enterprises on its property caused flooding problems on Respondents' land.

dents referenced the actions leading to the proposed amendment and referenced the prohibited counterclaim in closing argument. The jury awarded Justin Enterprises $1,300 on the causes of action it raised in its complaint and denied Respondents relief on their counterclaims.[3]

In September 2002, Appellants began planting large shrubs on the eastern boundary of Encampment Plantation Drive. Eventually, Appellants built a wire fence on the same boundary. These actions prevented Respondents from accessing Tract 1B at any point prior to the cul-de-sac.

Respondents then filed this action for declaratory judgment defining the rights of the parties in and to the easement, as well as an injunction ordering Appellants to tear down the fence and remove the newly-planted shrubs. Appellants answered, asserting the prior action between the parties barred Respondents' suit under the doctrines of res judicata and collateral estoppel. Appellants also denied their actions interfered with Respondents' rights.

After a bench trial, the trial judge granted injunctive relief to Respondents. The trial judge also found "the grant and scope of the easement ... was not at issue in the previous litigation and ... neither the doctrine of *res judicata* nor collateral estoppel bar suit in the present action." Appellants moved for reconsideration or a new trial, both of which the trial judge denied. This appeal followed.

## STANDARD OF REVIEW

■ Although the existence of an easement is a question of fact in a law action,[4] the determination of the extent of an easement is an equitable matter.[5] Accordingly, an appellate court may review the trial judge's findings *de novo*.[6] "Our broad scope of review, however, does not require this Court to

3. The verdict form failed to delineate the individual counterclaims, leaving this court to speculate which issues the jury decided.

4. *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987).

5. *Tupper v. Dorchester County*, 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997).

6. *Hardy v. Aiken*, 369 S.C. 160, 165, 631 S.E.2d 539, 541 (2006).

disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." [7]

## LAW/ANALYSIS

1. Appellants contend the trial judge erred in refusing to apply the doctrine of res judicata. We disagree.

 "Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." [8] Under res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." [9]

 "*Res judicata* requires three elements be met: 1) a final, valid judgment on the merits; 2) identity of parties; and 3) the second action must involve matters properly included in the first suit." [10] "The rule as to the conclusiveness of the prior adjudication has a different application where the prior and subsequent causes of action are identical and where the subsequent action is on a different cause of action." [11] Although res judicata may apply even though the plaintiff in the first suit proceeded under a different legal theory,[12] "where the second suit is upon a different claim, the former judgment is conclusive only as to those issues actually determined." [13]

7. *Gordon v. Drews*, 358 S.C. 598, 605, 595 S.E.2d 864, 867 (2004), *cert. denied* (Sept. 22, 2005) (citing *Ingram v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 291 (2000)).

8. *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999).

9. *Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Comm'n of S.C.*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987).

10. *Stone v. Roadway Express*, 367 S.C. 575, 580, 627 S.E.2d 695, 697 (2006).

11. *Lowe v. Clayton*, 264 S.C. 75, 81, 212 S.E.2d 582, 586 (1975).

12. *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43–44 (4th Cir.1990).

13. *Johnston–Crews Co. v. Folk*, 118 S.C. 470, 483, 111 S.E. 15, 19 (1922).

■ According to the amended complaint from the 1997 action, Justin Enterprises alleged Respondents were "continuously trespassing on [its] property, removing marketable timber, destroying landscape and burning evidence of such conduct...." In their answer and counterclaim, Respondents alleged Justin Enterprises "deliberately interfered with the free use and enjoyment ... of their property by preventing [them] and those hired by them from performing work on [their] property...." They also alleged Justin Enterprises trespassed on their property "by constructing and maintaining an underground power line without permission" and maintaining a pond and ditch system that caused flooding on their property. We have found nothing in the arguments Appellants presented either in their briefs or during oral argument that would explain how resolution of any of the claims or counterclaims would necessarily involve a determination of where Respondents could access their property from the right-of-way.[14] Moreover, the trial court's refusal to allow Respondents to proceed on their claim for interference with their use of the right-of-way was not a ruling on the merits of that cause of action.[15] We therefore hold there were no circumstances that would support a determination that res judicata barred Respondents' cause of action for interference with their easement.

2. Appellants also contend Respondents were collaterally estopped from relitigating the issue of the scope of the easement. We disagree.

■■ "Collateral estoppel prevents a party from relitigating in a subsequent suit an issue actually and necessarily

---

14. Likewise, we reject Appellants' argument that Respondents' present lawsuit is barred by res judicata as a compulsory counterclaim in the prior lawsuit. Appellants have not identified the requisite "logical relationship" between the cause of action in this appeal and the claims asserted by both sides in the 1997 litigation. *See N.C. Fed. Sav. & Loan Ass'n v. DAV Corp.*, 298 S.C. 514, 518, 381 S.E.2d 903, 905 (1989) (holding a counterclaim is compulsory only if a "logical relationship" exists between the claim and the counterclaim).

15. *See* 47 Am.Jur.2d *Judgments* § 495, at 56 (2006) ("[A] judgment is not res judicata as to any matters which a court expressly refused to determine.").

litigated and determined in a prior action." [16] "In order to successfully assert collateral estoppel, the party seeking issue preclusion must show that the issue was actually litigated and directly determined in the prior action, *and that the matter or fact directly in issue was necessary to support the first judgment.*" [17]

In support of their argument that Respondents were collaterally estopped from relitigating the issue of the scope of the easement, Appellants have quoted extensively from the trial transcript of the 1997 lawsuit. In the previous action, however, Justin Enterprises also advanced the position that Respondents could have removed the stakes placed along the eastern boundary of Encampment Plantation Drive. The verdict for Justin Enterprises in that action, then, could have been based on the jury's determination that the obstructions were not unreasonable rather than on any finding concerning Respondents' right to access their property at any point other than the cul-de-sac. Under these circumstances, we hold Appellants have not shown that resolution of the issue in controversy in the present appeal, namely where Respondents could access Encampment Plantation Drive from Tract 1B, was necessary to support the prior judgment.

3. Appellants argue the trial judge erred in finding their placement of the fence and shrubbery along the eastern boundary of Encampment Plantation Drive improperly interfered with Respondents' use of the easement. We disagree.

"The language of an easement determines its extent." [18] Thus, this court must construe unambiguous lan-

16. *Jinks v. Richland County,* 355 S.C. 341, 349, 585 S.E.2d 281, 285 (2003).

17. *Town of Sullivan's Island v. Felger,* 318 S.C. 340, 344, 457 S.E.2d 626, 628 (1995) (emphasis added) (citing *Richburg v. Baughman,* 290 S.C. 431, 351 S.E.2d 164 (1986) and *Beall v. Doe,* 281 S.C. 363, 315 S.E.2d 186 (Ct.App.1984)).

18. *Binkley v. Rabon Creek Watershed Conserv'n Dist.,* 348 S.C. 58, 67, 558 S.E.2d 902, 906–07 (Ct.App.2001).

guage in the grant of an easement according to the terms the parties have used.[19]

"The general rule is that the character of an express easement is determined by the nature of the right and the intention of the parties creating it." [20] The easement in this case was expressly "for the commercial and economic benefit of" Tract 1B. It grants Respondents a right of ingress and egress "upon, over and across" Encampment Plantation Drive and provides no express limits on the right of Respondents to traverse Encampment Plantation Drive as it existed at the time the easement was created.[21] The word "across" means "so as to intersect or pass at an angle (as a right angle) to...." [22] Respondents presented ample testimony supporting their contention that the fence and shrubbery prevented them from proceeding across Encampment Plantation Drive at several points along its eastern boundary.[23] Accordingly, we hold a preponderance of the evidence supports the trial judge's determination that the shrubbery and fence interfered with Respondents' use and enjoyment of the easement.[24]

---

19. *S.C. Pub. Serv. Auth. v. Ocean Forest, Inc.*, 275 S.C. 552, 554, 273 S.E.2d 773, 774 (1981).

20. *See Smith v. Comm'rs of Pub. Works of City of Charleston*, 312 S.C. 460, 467, 441 S.E.2d 331, 336 (Ct.App.1994).

21. *Cf. Carolina Land Co. v. Bland*, 265 S.C. 98, 106, 217 S.E.2d 16, 20 (1975) ("Generally, where a deed which describes land as bounded by a way indicates that the way extends beyond the land conveyed, ... the grantee acquires a right of way, not merely in front of his property, but also to the full extent of the way as indicated.").

22. *Webster's Third New Internat'l Dictionary* 20 (1986); *see also Zimmerman v. Am. Tel. & Tel. Co.*, 71 S.C. 528, 530, 51 S.E. 243, 244 (1904) ("The word 'along' means by length of, as distinguished from 'across.' ").

23. *See Sheppard v. Justin Enters.*, 373 S.C. 518, 646 S.E.2d 177 (2007) (Shearouse Adv. Sh. No. 20, at 76, 79) (holding a servient estate owner could not relocate an express easement because, among other reasons, the relocation increased the burden on the dominant estate).

24. Appellants argue the purpose of the fence and landscaping was "to preserve the historic and rustic nature of the 200–year–old drive" and point to documentation showing the Horners sought and received certain variances from the County that were premised on this objective. The need to maintain particular characteristics of Encampment Planta-

4. Finally, we reject Appellants' contention that "the disputed easement was created through a process tainted by misrepresentation in violation of the Charleston County Subdivision Regulations and was thus void *ab initio*."

■ Appellants argue that, because Robert Horner used his mother-in-law, Myrtis Jenkins, as a "straw purchaser" to circumvent applicable county regulations when he subdivided Tract 1, the subdivision failed to meet the requirements of the applicable regulations and was by definition invalid. We disagree. Notwithstanding the allegedly suspect nature of both the conveyance to Jenkins and her sale of Tract 1B to Respondents' predecessor-in-interest the same day she received title from the Horners, the initial transfer conformed to the regulations relevant to intra-family conveyances, and we are unaware of any restrictions on subsequent conveyances to other persons.[25] Moreover, there appears to be no dispute that both the subdivision and the easement were properly platted and recorded. To invalidate the easement to which Appellants' property is subject because of some impropriety allegedly tainting a prior transfer within their chain of title would be inherently unfair to subsequent purchasers, who rely

---

tion Drive, however, was never expressly mentioned in any of the documents granting the easement over the drive to access Tract 1B. Appellants also assert the trial judge's determination that Respondents "may enter and exit at any point along the boundary line between their property and the easement" is "clearly inconsistent with the singular and definite language used by the parties creating the easement." This specific argument was not explicitly ruled on by the trial judge, and Appellants did not raise this issue in their motion to alter or amend; therefore, we cannot address it on appeal. *See Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 124 (1991) (holding the court of appeals improperly addressed an issue that the "circuit court did not explicitly rule on" when the appellant did not raise the issue in a motion to alter or amend).

**25.** *See Newington Plantation Estates Ass'n v. Newington Plantation Estates,* 318 S.C. 362, 365, 458 S.E.2d 36, 38 (1995) ("As between an owner who has conveyed lots according to a plat and the grantee, the dedication of a private easement is complete when the conveyance is made.").

on public documents to determine their rights under recorded plats and deeds.

**AFFIRMED.**

KITTREDGE, J., and CURETON, A.J., concur.