674 S.E.2d 515

**William John PAYNE, Respondent,**

v.

**Sherry PAYNE, Appellant.**

**No. 4491.**

Court of Appeals of South Carolina.

Heard Nov. 6, 2008.

Decided Jan. 27, 2009.

Douglas Kosta Kotti, of Columbia, for Appellant.

Pamela Michele Pearson, of Rock Hill, for Respondent.

HEARN, C.J.:

Sherry Ann Payne (Mother) appeals from a family court order transferring custody of her minor son, Joshua Michael Payne, to William John Payne (Father). We affirm.

## FACTS

Mother and Father separated in 1996 after four years of marriage; however, they did not divorce until 2001. The

couple's son, Joshua, was one year old at the time. During the separation and following the divorce proceedings, Mother was awarded primary custody of Joshua. Father was given supervised visitation until Joshua's sixth birthday, at which point Father began a two-year gradual introduction to "standard [unsupervised] visitation." This phased-in custody arrangement was the result of Father's status as a convicted sex offender, per a 1989 Criminal Sexual Conduct (CSC) conviction, and Mother's allegations of domestic violence by Father directed toward herself and Joshua during the separation and pendency of the divorce proceedings. Father remarried later in 2001, and ultimately began having unsupervised visitation.

In October of 2004, both parents were named as defendants in a South Carolina Department of Social Services action stemming from allegations made by Joshua's pediatrician, Dr. Deanna Threatt. Threatt expressed concern that Joshua's frequent hospitalization and illnesses may be a form of child abuse, and after consulting with other doctors in her practice group, diagnosed Mother with Munchausen Syndrome by Proxy. DSS was notified and the police were called. At the probable cause hearing, temporary custody was initially given to maternal grandmother. Following DSS in-home evaluations of both Mother's and Father's homes, temporary custody was awarded to Father for the pendency of the DSS case. Ultimately, the court found Joshua was not abused and returned custody to Mother.

In 2005, Father filed an action seeking modification of the family court's custody order in light of the DSS incident. In her answer and counterclaim, Mother requested that: (1) Father's visitation be reduced to supervised or restricted visits; (2) the action be dismissed; (3) the parties be permitted to engage in discovery; and (4) Father pay her attorney fees and costs.

Following a trial, the family court issued a final order that, in relevant part, transferred custody of Joshua to Father as well as set a visitation schedule for Mother. At the same time, Mother's counsel withdrew his representation.

Shortly thereafter, Mother's new attorney filed a "motion to reconsider with exceptions," which was denied. Because no one had notified the clerk of court's office that Mother's

previous attorney no longer represented her, neither Mother, nor her new attorney, received the written order until January 29, 2007. Mother filed a pro se notice of appeal on February 26, 2007.

On March 14, 2007 Father's attorney moved to dismiss the appeal as untimely. Following Father's motion, both Mother's former attorney and Mother's attorney for the post-trial motion petitioned this court to be relieved as counsel of record for Mother. Mother consented to the motions, and on the same day, Mother's current attorney filed a notice of representation. Father's motion to dismiss the appeal was denied, but the parties were directed to address the issue of timeliness in their briefs.

## STANDARD OF REVIEW

"In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence." *Nasser–Moghaddassi v. Moghaddassi*, 364 S.C. 182, 189, 612 S.E.2d 707, 711 (Ct.App.2005) (citing *Emery v. Smith*, 361 S.C. 207, 213, 603 S.E.2d 598, 601 (Ct.App.2004)). However, this broad scope of review does not require us to disregard the family court's findings. *Bowers v. Bowers*, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002); *Badeaux v. Davis*, 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct.App.1999). Neither is the appellate court required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Latimer v. Farmer*, 360 S.C. 375, 380, 602 S.E.2d 32, 34 (2004); *Holler v. Holler*, 364 S.C. 256, 261, 612 S.E.2d 469, 472 (Ct.App.2005). Because the family court is in a superior position to judge the witness demeanor and veracity, its findings should be given broad discretion. *Durlach v. Durlach*, 359 S.C. 64, 70, 596 S.E.2d 908, 912 (2004); *Doe v. Doe*, 370 S.C. 206, 211–12, 634 S.E.2d 51, 54 (Ct.App.2006).

## LAW/ANALYSIS

### I. The Modification Order

"[W]hen a non-custodial parent seeks a change in custody, the non-custodial parent must establish the following:

(1) there has been a substantial change in circumstances affecting the welfare of the child and (2) a change in custody is in the overall best interests of the child." *Latimer v. Farmer*, 360 S.C. 375, 381, 602 S.E.2d 32, 35 (2004). At trial, Father successfully argued both prongs of *Latimer* and asks this court to affirm the family court's ruling.

On appeal, Mother argues the family court erred in granting Father's request for modification of the custody order for the following reasons: (1) failure to properly consider Father's status as a convicted sex offender; (2) failure to properly apply the doctrine of issue preclusion; (3) failure to comply with the child's preference regarding custody; and (4) failure to comply with the Private Guardian Ad Litem Reform Act barring the guardian from making a custody recommendation unless requested by the court for reasons specified in the record. She also asserts the family court erred in requiring her to pay one-half of the GAL fees. We disagree and affirm.

## A. *Father's Status as a Convicted Sex Offender*

Mother argues the family court erred by failing to give adequate consideration to Father's sex offender status. Mother points to section 20–7–1530(A) of the South Carolina Code (Supp.2007) as requiring the family court to consider Father's sex offender status with respect to custody. While Mother is correct insofar as § 20–7–1530(A) requires the court to give weight to "sexual abuse" in determining the best interest of the child, other relevant factors must also be considered. *See Pountain v. Pountain*, 332 S.C. 130, 136, 503 S.E.2d 757, 760 (Ct.App.1998) (stating that when determining the best interests of the child, the family court should consider how the custody decision will impact all areas of the child's life, including physical, psychological, spiritual, educational, familial, emotional, and recreational aspects).

Here, the family court was well aware of Father's sex offender status but simply declined to give it the weight desired by Mother. On direct examination, Father was questioned by his counsel regarding the circumstances of his CSC conviction. Father testified concerning the counseling and other remedial measures required of him as a result of his CSC conviction. During Father's cross examination on this issue, the family court stated, "I want to know the relevance of

this ... they've been in court many, many times and I know that's a fact; I've got all this in evidence, and ... I just don't think that's very relevant to this case." Thus, there is no question the family court judge was aware of Father's 1989 CSC conviction.

The family court based its custody decision primarily upon Mother's emotional and physical abuse of Joshua as testified to by Dr. Threatt, including, "numerous unnecessary [medical] procedures and hospitalizations." The court also relied on the testimony of Dr. Robert Noelker, who, in addition to expressing concerns over Mother's serious personality disorder and its effect on Mother's ability to parent, believed Father would provide Joshua a better home environment. Dr. Noelker also noted that due to the nature of Mother's personality disorder, extensive, long-term treatment, including the use of psychotropic medications, would be required to effectively treat her. Noelker additionally found Father was, "an excellent role model," and there were no current issues which would affect his ability to parent.

The Guardian ad Litem (GAL), Dr. Jane Rankin, echoed Noelker's statements regarding custody and testified Father was an involved parent who spent much time with Joshua. Rankin found Joshua to be "more relaxed" and "more independent" while in Father's custody during the DSS action. Additionally, Rankin reported Joshua was "tense" and "shy" upon returning to Mother's custody following termination of the DSS action.

The family court's custody decision was further supported by Joshua's principal, who testified Joshua missed approximately thirty days of school from the beginning of school until late October, while in Mother's custody, and only one day of school after custody was transferred to Father during the DSS action. She further noted that Joshua seemed "more relaxed and outgoing" when Father had primary custody.

### B. *Issue Preclusion/Collateral Estoppel*

Mother also argues Father's custody modification action was precluded by the ruling in the prior DSS case, and therefore, maintains the family court erred in not dismissing the action. We disagree.

According to our supreme court, issue preclusion, also known as collateral estoppel, occurs when the party in a second action is precluded from re-litigating an issue which was decided in a previous action. *Zurcher v. Bilton,* 379 S.C. 132, 135–36, 666 S.E.2d 224, 226 (2008) (stating an issue litigated and determined by a valid and final judgment is conclusive in a subsequent action whether on the same or a different claim). In order to successfully assert issue preclusion, a party must show the issue was actually litigated and directly determined in the prior action, and that the matter or fact directly in issue was necessary to support the first judgment. *Plott v. Justin Enters.,* 374 S.C. 504, 513, 649 S.E.2d 92, 96 (Ct.App.2007) (citing *Town of Sullivan's Island v. Felger,* 318 S.C. 340, 344, 457 S.E.2d 626, 628 (1995)).

Mother mischaracterizes the issue before the family court in the DSS action as a custody action. While it is true that custody was transferred to Father during the pendency of the DSS hearings, the issue in the DSS action was whether Mother abused or neglected Joshua. By comparison, the issue before the family court in the custody modification action was whether a substantial change affecting the welfare of the child had occurred and whether a change in custody would serve the best interests of the child. As the issue of custody between Mother and Father was neither litigated nor directly determined in the DSS action, we affirm as to this issue.

### C. Consideration of Joshua's Preference Regarding Custody

Mother further argues Joshua's preference was not given sufficient weight by the family court. We disagree.

When determining issues of custody, "the court should consider all the circumstances of the particular case and all relevant factors must be taken into consideration." *Pirayesh v. Pirayesh,* 359 S.C. 284, 296, 596 S.E.2d 505, 512 (Ct.App.2004). While the child's reasonable preference is a factor in considering the best interest of the child, it is not controlling. *Brown v. Brown,* 362 S.C. 85, 96, 606 S.E.2d 785, 791 (Ct.App.2004). Additionally, the trial court is required to, "place weight upon the preference based upon the child's age,

experience, maturity, judgment, and ability to express a preference." S.C.Code Ann. § 20-7-1515 (Supp.2007).

While not expressing an outright preference, Joshua stated that "he wanted things to stay the way they were." The family court acknowledged Joshua's preference in the final order, but clearly took other factors, such as Mother's emotional condition and its impact upon Joshua, into consideration in its decision to modify the custody arrangement. Accordingly, we do not believe the family court erred in failing to give Joshua's preference controlling weight.

### D. *The Private Guardian Ad Litem Reform Act*

██ Mother next asserts the family court erred by failing to set forth in the record the specific grounds for requesting the GAL's custody recommendation, as required by the Private Guardian Ad Litem Reform Act. S.C.Code Ann. § 20-7-1549(6) (Supp.2007). Mother argues that, as a result of failing to give reasons for accepting the GAL custody recommendation, the GAL usurped the trial court's role as a decision maker. Here, Mother did not object when the GAL gave her recommendation; therefore, this issue is not preserved for appellate review. To be preserved for appellate review, an issue must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal. *S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301-02, 641 S.E.2d 903, 907 (2007).

## II. The GAL Fees

Finally, Mother argues the family court erred in its division of the GAL fees. Additionally, Mother argues, "there is no recorded order appointing the [GAL] and no recorded order setting her fee rate or an initial authorization of her fees." We disagree.

South Carolina law provides that the family court should review the following factors when awarding GAL fees:

(1) the complexity of the issues before the court; (2) the contentiousness of the litigation; (3) the time expended by the guardian; (4) the expenses reasonably incurred by the guardian; (5) the financial ability of each party to pay fees

and costs; and (6) any other factors the court considers necessary.

S.C.Code Ann. § 20–7–1553(B) (Supp.2007).

■ "An award of GAL fees lies within the sound discretion of the [family court] and will not be disturbed on appeal absent an abuse of discretion." *Shirley v. Shirley*, 342 S.C. 324, 341, 536 S.E.2d 427, 436 (Ct.App.2000). The trial court abuses its discretion when a decision is based upon an error of law or upon factual findings that are without evidentiary support. *State v. Morris*, 376 S.C. 189, 206, 656 S.E.2d 359, 368 (2008).

After reviewing the GAL's time expenditure and her hourly rate, the family court found the GAL competently performed her services and was entitled to payment of her fees and expenses in the amount of $3,773. This was consistent with a July 29, 2005, order that appointed Dr. Rankin, set her hourly rate, and determined that each party would share equal responsibility for the balance of the fees owed to the guardian. Consequently, the family court did not abuse its discretion by splitting the guardian fees between the parties.

The ruling of the family court is accordingly

**AFFIRMED.**

SHORT, J., and KONDUROS, J., concur.