732 S.E.2d 667

David R. MARTIN and Patricia F. Martin,
Respondents/Appellants,

v.

Ann P. BAY, Harvie Goddin, Tony L. Hannon
and Diann F. Hannon, Defendants,

Of whom Ann P. Bay and Harvie Goddin
are, Appellants/Respondents.

No. 5035.

Court of Appeals of South Carolina.

Heard March 13, 2012.

Decided Sept. 19, 2012.

G. Dana Sinkler, of Warren & Sinkler, L.L.P., of Charleston, for Appellants/Respondents Ann P. Bay and Harvie Goddin.

David R. Martin and Patricia F. Martin, pro se, of Edisto Island, for Respondents/Appellants.

LOCKEMY J.

In this direct appeal, Appellants/Respondents Ann P. Bay and Harvie Goddin argue the Master–In–Equity (Master) erred in admitting evidence to interpret the extent of the easement at issue when the Master had found the covenant language determining the boundaries of the easement was unambiguous. Further, Bay and Goddin contend the Master erred in taking judicial notice of the propensity of the critical

line to migrate and then imposing a setback in excess of the setback established by the county. On cross-appeal, the Patricia and David Martin argue the Master erred in reconsidering his decision to award attorney's fees. We affirm.

## FACTS

The Martins initiated this action on June 9, 2008, seeking a declaration of the rights of the owners of four lots (Lots A, B, C, and D) to an easement for use of a gazebo, dock, and boat ramp constructed on Lot C. Specifically, the Martins sought a declaratory judgment that the covenants in a Declaration of Covenants, Conditions and Restrictions (Covenants) were binding on the owners of Lots A, B, C, and D and that they hold an easement permitting them full use of an easement allowing access to the community gazebo, dock, and boat ramp located on Lot C. The easement is shown on a recorded plat and traverses the length of the property line between Lots C and D. While the width of the easement at one end, where it is bounded by a cul de sac, is fifteen feet, as the easement continues towards the marsh, it expands to over one hundred feet at the water. The Martins own Lots B and D, while Lot C is owned by Bay and Lot A is owned by Tony and Diann Hannon. Goddin is Bay's husband. Before the trial, the parties stipulated that the Covenants were binding on all four lots in the subdivision.

The grant of the perpetual easement and indemnification agreement was properly executed on May 31, 1996 between the original developer, John L. Gramling, and the Martins. The easement's description is as follows:

A pedestrian/vehicular easement for ingress and egress from Jumbo Lane, across Tract C to the community dock, gazebo and boat landing, said route shall be the route shown on the plat by David W. Spell, RLS dated January 31, 1996 a copy of which is attached hereto and specifically incorporated herein by reference; said easement is for the mutual benefit of the property being simultaneously conveyed to David Martin and Patricia F. Martin and property of the Grantor as shown on the above Plat and is a perpetual non-exclusive, appendant, appurtenant easement which shall run with the land and is essentially necessary to the enjoyment of the property conveyed above, and such property of the

prior Grantor as is shown on the above referred to Plat, and shall be transmissible by deed or otherwise upon conveyance or transfer of the above conveyed property.

The referenced plat shows the easement as fifteen feet wide at its access point from the cul de sac on Jumbo Lane joining a triangular shaped area approximately one hundred and fifty feet from Jumbo Lane. The southern boundary of the easement is also the boundary between Lots C and D. The Martins testified that when they acquired the easement, it was their understanding the easement entitled them to access the easement by entering from any point along the boundary, including pedestrian access across the property line directly to the dock.

Bay purchased Lot C on October 10, 2003. Title of the property was held by her alone. In late 2007, a disagreement arose between Bay and the Martins about the Martins' access to the easement. Bay argued at trial the Martins do not have the right to cross the easement line at any point, but must access the easement at Jumbo Lane and traverse the easement to the community area. While the walk from the Martins' back porch across the property line between Lot C and D to the community area is approximately 150 feet, the route Bay suggested creates a distance of approximately 400 feet. Patricia testified she suffers from a condition that makes it difficult for her to walk. She stated if she could no longer use their normal route across the property line, she would have to drive her car and park it in the easement while using the community area. Bay stated a car parked in the easement would create a greater burden than if the Martins used the route crossing the property line. However, Bay also stated she wished to build a fence along the property line of Lots C and D, which the Martins argued would interfere with their right to access the easement.

The Master took judicial notice that Lot C, due to its Agricultural Residential (AGR) zoning, had restrictions placed on it, specifically that a party was prohibited from constructing a fence in the buffer zone defined to be thirty-five feet back from the critical line, pursuant to the Charleston County Zoning and Land Development Regulations (ZLDR).[1]

---

1. The ZLDR states these buffer zones are intended to "provide a natural vegetated area between the furthermost projection of a structure, park-

S.C.Code Ann. § 6–29–720 (Rev.2004 & Supp.2011) ("[T]he governing body of a municipality or county may adopt a zoning ordinance to help implement the comprehensive plan."); ZLDR § 9.7.1(B)(1). The Master also took judicial notice of the fact "that the [c]ritical [l]ine is not a permanently fixed line, but tends to move further inland with ocean level rise and/or erosion." Further, the Master noted that because of this buffer, it would "not be permissible for Bay to place a fence of a sufficient length to prevent access by the Martins by both vehicle and foot along the end of such a fence near the marsh."

Regarding the extent of the easement, the Master concluded the "language of the grant of easement is not ambiguous." The Master found the language of the easement similar to that in *Plott v. Justin Enterprises*, 374 S.C. 504, 649 S.E.2d 92 (Ct.App.2007). Moreover, in addition to the thirty-five foot buffer zone, the court ordered an additional five feet to allow for the acknowledged inland migration of the critical line. The Master noted that because Bay and Goddin were prohibited from erecting a fence in the forty feet[2] above the critical line, the Martins would be allowed to access the easement at any point in the unobstructed portion of the property line between Lots C and D at the marsh end. The Master held "no fence constructed by the owner of Lot C may be extended to the edge of the marsh so as to deny access to the easement by the owners of Lot D."

Also at issue in the trial stage were Bay and Goddin's violations of the Covenants. Alleged incidents between Bay and Goddin and the Martins were ongoing from 2006 to 2008. At trial, the Master inquired of the Martins' counsel: "As I read these restrictions they talk as an either or injunctive relief or damages. Do you agree with that?" The Martins' counsel answered in the affirmative and stated they sought

---

ing or driveway area, or any other building elements, and all saltwater wetlands, waterways and OCRM (saltwater) critical lines." ZLDR § 9.7.1(A).

2. The forty feet of unobstructed property line consists of the thirty-five foot buffer zone required by the ZLDR and the additional five feet added to the buffer zone by the Master.

injunctive relief, because it was "[m]uch more important." At the trial's conclusion, the Master stated,

> But in response to my request about the injunctive relief is it looked like a question of damages. I don't know if it covered this question of attorney's fees; haven't looked that far. I think the prevailing party can get those attorney's fees. I'll look that up when the time comes.

In his order, the Master noted the Martins elected the remedy of injunction and not damages, and then found Bay and Goddin violated several of the Covenants. Bay and Goddin were enjoined from any further violations of the Covenants. In addressing attorney's fees, the Master acknowledged that Paragraph 2 of the Covenants provided for an award of reasonable attorney's fees to any party required to file an action to enforce the Covenants. The Master awarded attorney's fees and costs incurred in filing this action to the extent that the fees and costs were incurred to enforce the Covenants and to establish the above violations of the Covenants by Bay and Goddin.

Bay and Goddin filed a Rule 59(e) motion to alter or amend the trial court's judgment on February 26, 2010. At the Rule 59(e) hearing, Bay and Goddin contended that because the Master found the description of the easement was unambiguous, the Master must construe the easement from only the plat and deed themselves, and not from any further testimony. The Master responded:

> There wasn't a movement or a change in the location of the easement. There was only a determination as to when, where and how they could utilize the easement ... Use of the easement by the Martins and their access which had been continuous, that they would walk out of their house, across their property line, directly to the gazebo and dock rather than walking the half mile route or whatever it would take ... I just don't agree with your premise that they could only access it from the entrance on Jumbo Lane. I just don't agree with that. And I think that that's both the practicality of the situation as well as the use that it's been put to for all those years. So the easement itself I don't find to be ambiguous; the location of the easement. The issue of access to the easement, if that's the word we want to use, was what the case was tried over and I find that

common sense should prevail over any literal meaning which, if that's what you're getting at, I would find that the access to this easement should be anywhere along the line.

Addressing the issue of attorney's fees during the Rule 59(e) hearing, the Master found that while the Martins adequately pled their request and the amount was reasonable and fair, the language of the Covenants required a party to choose between damages suffered by reason of violation of the Covenants *or* an injunction requiring the Covenants be followed. Because the Martins sought to enforce the Covenants through an injunction, the Master decided the Covenants did not provide for an award of fees; thus, the Master modified the original order to eliminate the award of attorney's fees and costs to the Martins.

This direct appeal and cross appeal followed.

## ISSUES ON APPEAL

### A. Bay and Goddin's Direct Appeal

1. Did the Master err in admitting evidence beyond the easement conveyance documents to interpret the extent of the easement?

2. Did the Master err in imposing a setback line of an additional five feet in excess of the setback line established by the county for construction of Bay's fence?

### B. The Martins' Cross Appeal

1. Did the Master err in failing to allow the Martins to request relief in both law and equity?

## STANDARD OF REVIEW

"Although the existence of an easement is a question of fact in a law action, the determination of the extent of an easement is an equitable matter." *Plott*, 374 S.C. at 510, 649 S.E.2d at 95 (citing *Jowers v. Hornsby*, 292 S.C. 549, 551, 357 S.E.2d 710, 711 (1987); *Tupper v. Dorchester Cnty.*, 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997)). "Accordingly, an appellate court may review the [Master's] findings de novo." *Id.* (citing *Hardy v. Aiken*, 369 S.C. 160, 165, 631 S.E.2d 539, 541 (2006)). " 'Our broad scope of review, however, does not require this [c]ourt to disregard the findings of the [Master]

who saw and heard the witnesses and was in a better position to judge their credibility.'" *Id.* at 510–11, 649 S.E.2d at 95 (quoting *Gordon v. Drews,* 358 S.C. 598, 605, 595 S.E.2d 864, 867 (2004)).

## LAW/ANALYSIS
### Admission Of Evidence To Interpret Extent Of Easement

Bay and Goddin contend the Master erred in allowing further testimony regarding access to the easement because the language and plat of the easement are unambiguous, thus, taking any further testimony on the extent of the easement is improper. We find that even if portions of the testimony were admitted in error, it was harmless.

" 'The language of an easement determines its extent.'" *Plott,* 374 S.C. at 513, 649 S.E.2d at 96 (quoting *Binkley v. Rabon Creek Watershed Conservation Dist.,* 348 S.C. 58, 67, 558 S.E.2d 902, 906–07 (Ct.App.2001)). "Clear and unambiguous language in grants of easement must be construed according to terms which parties have used, taken, and understood in plain, ordinary, and popular sense." *S.C. Public Serv. Auth. v. Ocean Forest, Inc.,* 275 S.C. 552, 554, 273 S.E.2d 773, 774 (1981). " 'The general rule is that the character of an express easement is determined by the nature of the right and the intention of the parties creating it.'" *Plott,* 374 S.C. at 514, 649 S.E.2d at 96 (quoting *Smith v. Comm'rs of Pub. Works of Charleston,* 312 S.C. 460, 467, 441 S.E.2d 331, 336 (Ct.App. 1994)). "The intention of the parties must be determined by a fair interpretation of the grant or reserve creating the easement." *Springob v. Farrar,* 334 S.C. 585, 595, 514 S.E.2d 135, 141 (Ct.App.1999) (citing *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 420, 143 S.E.2d 803, 807 (1965)).

"If the language in the grant or reservation is uncertain or ambiguous in any respect, the court may inquire into and consider all surrounding circumstances, including the construction which the parties have placed on the language." *Id.; see Smith,* 312 S.C. at 467, 441 S.E.2d at 336 (finding that whether grant in written instrument creates easement and type of easement created are to be determined by ascertaining intention of parties as gathered from language of instrument; grant should be construed so as to carry out that intention);

*see also* 25 Am.Jur.2d Easements and Licenses § 18 (2004) (stating if language is uncertain or ambiguous in any respect, all surrounding circumstances, including construction which parties have placed on language, may be inquired into and taken into consideration by court, to end that intention of parties may be ascertained and given effect). "An ambiguous agreement is one capable of being understood in more ways than one, an agreement obscure in meaning, through indefiniteness of expression, or containing words having a double meaning." *Smith*, 312 S.C. 460, 465, 441 S.E.2d 331, 335 (Ct.App.1994) (citing *Carolina Ceramics, Inc. v. Carolina Pipeline Co.*, 251 S.C. 151, 155–56, 161 S.E.2d 179, 181 (1968); *Proffitt v. Sitton*, 244 S.C. 206, 136 S.E.2d 257 (1964)). The ambiguity "must be interpreted, however, in light of good faith, reasonableness and what was necessarily the intent of the parties" to the original agreement. *Id.* at 468, 441 S.E.2d at 336. "In determining the extent of the easement (number of access points or routes), consideration must be given to what is essentially necessary to the enjoyment of the [dominant estate]." *Id.* (citing *Sandy Island Corp.*, 246 S.C. at 419–20, 143 S.E.2d at 806; *Carolina Land Co. v. Bland*, 265 S.C. 98, 217 S.E.2d 16 (1975); *Jacobs v. Service Merchandise Co.*, 297 S.C. 123, 375 S.E.2d 1 (Ct.App.1988); 12 S.C. Juris. Easements § 20)).

 We share understanding with the Master's interpretation of access to the easement. The pertinent portion of the easement description states:

A pedestrian/vehicular easement for ingress and egress from Jumbo Lane, across Tract C to the community dock, gazebo and boat landing, said route shall be the route shown on the plat by David W. Spell, RLS dated January 31, 1996 a copy of which is attached hereto and specifically incorporated herein by reference. . . .

After examining the easement description and plat referenced in the conveyance, the location is shown as being bounded by Jumbo Lane, following down the property line between Lot C and Lot D, to the community area. We must "construe unambiguous language in the grant of an easement according to the terms the parties have used," and thus, we find it is not within our authority to alter the location or boundaries of the

easement. However, despite the unambiguous description of the easement's location and boundaries, there is no mention of access to the easement.

Due to the absence of language regarding access to the easement, the Master was permitted to consider all surrounding circumstances in determining the access that was intended by the conveyance. The Martins testified to having travelled to the community area by passing over their property line onto the easement from when the developer, also the grantor, first finished constructing the dock. Because Bay cannot construct a fence or any other obstruction within a certain distance from the marsh due to the setback requirements and buffer zone provided in the ZLDR, there would not be an obstacle to vehicular or pedestrian access by the Martins to the community dock along a portion of their shared property line with Bay. The sole purpose of the easement as stated in the conveyance was for "pedestrian/vehicular" use by the Martins. The Master's ruling simply allows the Martins to step over their property line, directly onto their express easement, for the very purpose for which the easement was intended. This is a reasonable determination of access to the easement, and one that fits within the intent of the original parties to the easement. Based on the foregoing, we hold the Master correctly admitted testimony regarding access to the easement.

Regarding the potential of a fence along the easement, the Martins argued the Master ordered a fence could not be constructed along any portion of Lot C and D's property line, but could be placed on the outside of the easement on Bay's side. However, the Master's original order stated:

> Erection of a fence by Bay will not interfere with the easement rights of the owners of Lots A and B to any degree so long as it is constructed close enough to the boundary of the easement so as not to narrow the easement and diminish its utility. Such a fence will of necessity block the Martins from accessing the easement along the length of the fence ... A fence which ends a sufficient distance from the edge of the marsh to permit vehicular access from Lot D onto Lot C will not interfere with the use the Martins have made of the easement for eleven years.

The Master's ruling regarding this decision was not altered in his Rule 59(e) order. The order, as written, allows for a fence to be built on the property line. Thus, we disagree with the Martins' contention. However, because there is a setback requirement in the ZLDR, there will be a portion of the property line that cannot have a fence constructed upon it.

**Establishing Setback Line By Judicial Notice**

██ Bay and Goddin argue the Master erred in taking judicial notice of the migration of the critical line, which led to the Master imposing an additional five foot setback in excess of the mandatory buffer zone required by the ZLDR. We disagree.

Rule 201, SCRE governs judicial notice. The pertinent portion states:

(a) Scope of Rule. This rule governs only judicial notice of adjudicative facts.

(b) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Rule 201(a)–(b), SCRE.

██ " 'A trial court may take judicial notice of a fact only if sufficient notoriety attaches to the fact involved as to make it proper to assume its existence without proof.' " *Bowers v. Bowers*, 349 S.C. 85, 94, 561 S.E.2d 610, 615 (Ct.App. 2002) (quoting *Eadie v. H.A. Sack Co.*, 322 S.C. 164, 171–72, 470 S.E.2d 397, 401 (Ct.App.1996)). "A fact is not subject to judicial notice unless the fact is either of such common knowledge that it is accepted by the general public without qualification or contention, or its accuracy may be ascertained by reference to readily available sources of indisputable reliability." *Id.* (quoting *Eadie*, 322 S.C. at 172, 470 S.E.2d at 401).

Here, the Master explained the basis for its judicial notice at the Rule 59(e) hearing by stating:

[T]his is based on personal observation and, therefore, that's why I think judicial notice should be sufficient. There is both, in this county, erosion of property and accretion of

property, and I believe that, based upon my experience on the Planning Board, that every five years the requirement is that the critical line be readjusted on properties in the event of future development. So that's one notice that [this court has] had.

Two will be my personal observation in my own yard....

We find the Master properly took judicial notice of the critical line as stated in § 9.7 of the ZLDR. *See Massey v. War Emergency Co-op. Ass'n*, 209 S.C. 292, 299, 39 S.E.2d 907, 912 (1946) (finding the trial court took proper notice of the rules and regulations promulgated by an agency pursuant to applicable statutes). We also find the Master properly took judicial notice of the setback from the critical line, as stated in §§ 9.7.1, 9.7.2 of the ZLDR. However, we are not convinced it was proper for the Master to take judicial notice of the migration of the critical line. The Master inaccurately stated his personal knowledge of the critical line's migration created a basis for judicial notice. We do not believe that fact is one of common knowledge accepted by the general public without qualification or contention. The Master does not cite any readily available source in reference to this fact, nor does a review of the ZLDR establish this fact to be true either.

 While it might have been improper to take judicial notice of the migration of the critical line based upon personal experience, we believe there is evidence on the record for the Master to determine there can be a migration of the critical line. The dialogue between the Master and the expert surveyor was as follows:

The Court: Before you go, what would be the length of that easement along the waterfront? 76 ten plus—

The Witness: 76 ten, L–4 would be 32.05 and L–3 would be 8.34. That would be the DHEC critical line.

The Court: Which does move from time to time, but that's the dimension you found?

The Witness: Yes.

Because the Master was provided with this expert surveyor's testimony, we find it was within his discretion to order an additional five feet to the setback line. Accordingly, we affirm the Master.

**The Martins' Cross Appeal**

█ The Martins contend the Master erred in failing to allow them to request relief in both law and equity. Specifically, they argue the denial of their request for attorney's fees places the burden of enforcing Covenants upon the enforcer and favors the violator. We disagree.

█ As a threshold issue, Bay and Goddin claim that because the Martins did not request attorney's fees in their pleadings, they are not entitled to such relief. Bay and Goddin did not raise this issue as a ground for their appeal. Thus, as respondents in this cross-appeal, they have failed to preserve the issue; the ruling of the Master that the Martins adequately pled attorney's fees is the law of the case. *See Commercial Credit Loans, Inc. v. Riddle*, 334 S.C. 176, 187, 512 S.E.2d 123, 129 (Ct.App.1999) (providing that a holding contested by a respondent is the law of the case where the respondent failed to cross-appeal that holding). However, despite the Martins' assertions, we find the Master was correct in reversing his decision to award attorney's fees.

After reviewing the terms of the Covenants that all parties stipulated to, we find the Martins had two alternative remedies. Paragraph 2 of the Covenants states:

> Upon violation of any covenant or restriction, or upon the attempted violation of any of said covenants, it shall be lawful for any person or persons, firm, corporation or corporations, owning any lot or other property situated in said Subdivision to prosecute any proceeding at law or in equity against such violator and *either* to prevent him or them from so doing *or* to recover damages, including attorneys fees and costs incurred in enforcing these covenants and restrictions for such violation.

(emphasis added). In light of the document's plain language, we think the parties intended the word "or" in accordance with its common, disjunctive usage. *See Harris v. Anderson Cnty. Sheriff's Office*, 381 S.C. 357, 362, 673 S.E.2d 423, 425 (2009) (citing *Brewer v. Brewer*, 242 S.C. 9, 14, 129 S.E.2d 736, 738 (1963) (noting that the use of the word "or" in a statute "is a disjunctive particle that marks an alternative")). While the Martins contend a decision that they must choose between injunctive relief or damages creates a situation where the

burden of enforcing the Covenants falls solely on the enforcer, we disagree. By choosing damages as their relief, they may get costs and attorney's fees, which may in turn prevent the violator from violating again. With injunctive relief, they may enforce the court ordered injunction and the violators will be found in contempt if the order is violated. We also note that previously, in response to the Master's question of whether the Martins sought damages or injunctive relief, the Martins' counsel stated injunctive, as it was much more important. Therefore, we affirm the Master on this issue.

## CONCLUSION

For the forgoing reasons, we affirm the Master.

**AFFIRMED.**

WILLIAMS and THOMAS, JJ., concur.