**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Barbara Jones, as Guardian ad Litem, and South Carolina Department of Social Services, Plaintiffs,

v.

Jessie Walters and Lucius Blake Walters, Defendants,

Of which South Carolina Department of Social Services and Jessie Walters are Respondents, Barbara Jones is Appellant-Respondent, and Lucius Blake Walters is Respondent-Appellant.

In the interests of minor children under the age of eighteen.

Appellate Case No. 2023-000287

Appeal From Greenville County
Jessica Ann Salvini, Family Court Judge

Unpublished Opinion No. 2024-UP-212
Heard June 12, 2024 – Filed June 14, 2024

**AFFIRMED**

Jennifer Lynn Mook, of Law Office of Jennifer Mook, LLC, of Aiken, for Appellant-Respondent.

Bruce A. Byrholdt, of Byrholdt Drawdy, LLC, of Anderson, for Respondent-Appellant.

Robert Mills Ariail, Jr., of Law Office of R. Mills Ariail, Jr., of Greenville, for Respondent Jessie Walters.

Dustin Christian Davis, of Dustin C. Davis Attorney at Law, LLC, of Greenville, as Guardian ad Litem for Respondent Jessie Walters.

Amanda Stiles, of South Carolina Department of Social Services, of Greenville, for Respondent South Carolina Department of Social Services.

**PER CURIAM:** Lucius Blake Walters (Father) and Barbara Jones, in her capacity as guardian ad litem (GAL), cross appeal a family court order terminating Father's parental rights to his two minor children (Children). Father argues the family court erred in finding clear and convincing evidence showed (1) Children were harmed, and due to the severity or repetition of the abuse or neglect, it was unlikely Father's home could be made safe within twelve months; (2) Father willfully failed to support Children; (3) Children were in foster care for fifteen of the previous twenty-two months; and (4) TPR was in Children's best interests. The GAL argues the family court erred in finding clear and convincing evidence did not show Father failed to remedy the conditions that caused Children's removal. We affirm.

"On appeal from the family court, the appellate court reviews factual and legal issues de novo." *Klein v. Barrett*, 427 S.C. 74, 79, 828 S.E.2d 773, 776 (Ct. App. 2019). Under the de novo standard of review, this court may make its own findings of fact; however, we continue to recognize the superior position of the family court to assess witness credibility. *Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018). Moreover, de novo review does not relieve the appellant of the burden of showing that the preponderance of the evidence is against the family court's findings. *Id.*

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2023). The grounds for TPR must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999). "Clear and convincing evidence is that degree of proof which will produce in the

mind of the trier of facts a firm belief as to the allegations sought to be established." *Loe v. Mother, Father, & Berkeley Cnty. Dep't of Soc. Servs.*, 382 S.C. 457, 465, 675 S.E.2d 807, 811 (Ct. App. 2009) (quoting *Anonymous (M–156–90) v. State Bd. of Med. Exam'rs*, 329 S.C. 371, 374 n.2, 496 S.E.2d 17, 18 n.2 (1998)).

We hold Children were harmed, and the severity of the abuse or neglect made it unlikely Father's home could be made safe within twelve months. *See* § 63-7-2570(1) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed . . . and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months"); S.C. Code Ann. § 63-7-20(6)(a)(i) (Supp. 2023) (explaining that "'harm' occurs when the parent . . . allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child"). The testimony clearly and convincingly established that Children were severely harmed. Uncontroverted testimony, including that of Erin Peden, the Department of Social Services (DSS) foster care supervisor, and several experts who treated Children, showed Children entered into foster care with significant mental health needs resulting from the abuse and neglect they suffered in the care of their biological parents. The experts testified Children suffered neglect in Father's home, Child 1 was diagnosed with post-traumatic stress disorder, and Children disclosed numerous instances of abuse and neglect by Father and re-enacted trauma during therapy sessions.

Moreover, clear and convincing evidence showed that due to the severity of the abuse or neglect, it was unlikely Father's home could be made safe within twelve months. Peden confirmed the "crux" of the case was Children's mental health "and the abuse they suffered at the hands of their parents." At the time of the hearing, Father had two years to comply with the family court's November 2020 directive—which the court reiterated pursuant to the August 2021 hearing—to communicate with Children's healthcare providers, and he had three years to comply with the placement plan's requirement that he demonstrate he understood and could provide for Children's emotional, physical, and developmental needs. Despite this time frame, during which Children remained in foster care, Peden admitted Father had not fulfilled these requirements because he contacted only one of Children's individual therapists. Father was also unable to identify Child 1's mental health diagnoses, equivocated regarding whether his actions had caused Children psychological damage, and admitted to no wrongdoing outside engaging in an extramarital affair. Accordingly, we hold the severity of the abuse and neglect

Children suffered and Father's failure to comprehend Children's mental health needs three years after their removal made it unlikely his home could be made safe within twelve months.

Additionally, we hold clear and convincing evidence showed Children had been in foster care for fifteen of the previous twenty-two months. *See* § 63-7-2570(8) (providing a statutory ground for TPR is met when a "child has been in foster care . . . for fifteen of the most recent twenty-two months"). Undisputed testimony established that Children had been in foster care since October 10, 2019—three years before the October 2022 TPR hearing. Further, we find Father caused the delay in reunification. *See S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013) ("[S]ection 63-7-2570(8) may not be used to sever parental rights based solely on the fact that the child has spent fifteen of the past twenty-two months in foster care. The family court must find . . . the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected."). At the November 3, 2020 permanency planning hearing—one year after Children were removed—the family court found Children should not be returned to Father's care because he had not remedied the conditions that caused the removal. At the August 31, 2021 permanency planning hearing—almost two years after Children were removed—the family court again found Father had not remedied the conditions that caused Children's removal. At the TPR hearing, Peden conceded that despite DSS's position that Father had completed his placement plan, Father had not "remedied th[e] particular issue of understanding the children's needs in therapy." She admitted Father's failure to make behavioral changes until Children had been in foster care for almost two years had caused them additional harm and extended their placement in foster care. Rachel Curtis, Children's DSS case manager, agreed with the characterization that Father "finally show[ed] up after two years" in order to "play nice and impress DSS." Although this case was subject to several procedural delays—most notably, a prior family court judge's recusal following the first TPR hearing in October 2021 due to ex parte communication by an individual associated with Children's foster parents (Foster Parents)—the evidence showed the delay in reunification up to October 2021 was due to Father's refusal to cooperate with DSS and his failure to complete his placement plan. Moreover, because the testimony showed that Father began to cooperate with DSS following the disrupted October 2021 TPR hearing, leading DSS to ultimately change its recommendation from TPR to reunification, any delay after October 2021 only benefitted Father. Accordingly, we hold clear and convincing evidence showed Children had been in foster care for fifteen of the previous twenty-two months, and Father, rather than DSS or any

other forces outside of his control, caused the delay in reunification. *See Sarah W.*, 402 S.C. at 343, 741 S.E.2d at 749 ("[T]he purpose of the statutory ground allowing for TPR once a child has been in foster care for fifteen of the last twenty-two months is to ensure that children do not languish in foster care when TPR is in their best interests.").[1]

We hold clear and convincing evidence showed TPR was in Children's best interests. *See S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 626, 614 S.E.2d 642, 645 (2005) (explaining that although "[p]arents have a fundamental interest in the care, custody, and management of their children" and "[p]arental rights warrant vigilant protection under the law," children have "a fundamental interest in terminating parental rights if the parent-child relationship inhibits establishing secure, stable, and continuous relationships found in a home with proper parental care"); S.C. Code Ann. § 63-7-2620 (2010) ("The interests of the child shall prevail if the child's interest and the parental rights conflict."); *Sarah W.*, 402 S.C. at 343, 741 S.E.2d at 749-50 ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."). We are concerned by suggestions in the record that Foster Parents alienated Children from Father, particularly the foster mother's rejection of suggestions made by one of Children's therapists to soothe Children's anxieties leading up to the TPR hearing. However, Children's therapists did not believe Foster Parents had intentionally increased Children's anxieties, and the testimony showed that DSS did not have concerns regarding Foster Parents until October 2021, when Child 1 had lived with Foster Parents for two years and Child 2 had been placed with them for sixteen months. Moreover, DSS had been preparing to file a motion to halt Father's visitation shortly before DSS employees began holding the conversations that precipitated the agency's reversal in recommendation from TPR to reunification—without consulting Children's therapists or considering the status of Children's mental health needs. Although an attachment assessment did not reveal that Children had formed a secure attachment to Foster Parents, the expert who performed the assessment opined Children were

---

[1] Because we hold clear and convincing evidence supports TPR on two statutory grounds, we decline to address Father's remaining issue and the GAL's issue on appeal, both of which relate to additional statutory grounds. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613, 582 S.E.2d 419, 425 (2003) (declining to address a statutory ground for TPR after concluding clear and convincing evidence supported another ground); *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

beginning to form such an attachment to Foster Parents, and removing the "back-and-forth" with Father would expedite the formation of the bond. Additionally, several experts opined that returning Children to Father's care would be harmful and destabilizing. Accordingly, we hold clear and convincing evidence showed TPR was in Children's best interests.[2]

**AFFIRMED.**

**THOMAS, MCDONALD, and VERDIN, JJ., concur.**

---

[2] To the extent Father asserts a violation of his constitutional right to due process, this argument is not preserved for appellate review because Father did not raise it to the family court at the hearing or in a post-trial motion. *See Payne v. Payne*, 382 S.C. 62, 70, 674 S.E.2d 515, 519 (Ct. App. 2009) ("Issues not raised and ruled upon in the [family] court will not be considered on appeal."); *Charleston Cnty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 105, 627 S.E.2d 765, 775 (Ct. App. 2006) (holding a parent's due process argument was not preserved for appellate review when the issue was not raised to or ruled upon by the family court).